## McCormack v. Phillips.

1. MODE OF TRIAL—STIPULATION AS TO—BINDING ON PARTIES—FORECLOSURE OF MECHANICS' LIEN.

In an action to foreclose a mechanic's lien, where the parties stipulate for a trial by jury upon the issues made by the pleadings, the verdict of the jury and judgment of the court will stand, notwithstanding the fact that the mode of trial adopted by the parties may not in all respects be in accord with the ordinary practice in such cases, if the verdict and judgment are warranted by the law, pleadings and evidence.

2. SUBMISSION OF LAW QUESTION TO JURY—NOT ERROR, WHEN.

Neither the submission by the court of a question of law to the jury, nor the finding of the jury thereon is good ground for exception or assignment of error, provided such finding of the jury is right in law, under the evidence in the case.

3. VERDICT—FAILURE TO ANSWER SPECIAL QUESTIONS—NOT ERROR.

When all the material issues in the case are fairly and fully submitted to the jury under proper instructions, and a general verdict covering all the issues is returned, it is not error to refuse to submit to the jury special questions of fact, nor is it error in such case if the jury fail to answer such special questions.

4. MECHANIC'S LIEN—FOR SUM GREATER THAN IS DUE—EFFECT OF.

In a mechanic's lien the claim of a greater sum than is really due after deducting all just credits, will not invalidate the lien unless the claim or statement is wilfully false.

5. JUDGMENT—ISSUE OF EXECUTION ON.

In an action to foreclose a mechanic's lien, a judgment which directs the issuance of an execution and a sale of the property to satisfy the lien, in the manner provided by law for the sale of real property under execution, is not erroneous.

6. DECREE—LIEN ON ONE BUILDING—LABOR AND MATERIALS FOR THREE BUILDINGS.

An assignment of "error in decreeing a lien on the land and one building for labor and materials done and furnished for three buildings," fails when it appears that the lien adjudged to plaintiff is the identical one filed, described in the complaint, and against the same property described in the lien and complaint, and no other property.

7. DECREE— SALE OF PREMISES—INSTEAD OF DEFENDANT'S INTEREST IN.

In such case a judgment decreeing the sale of "the premises," instead of defendant's right, title and interest therein, is not erroneous.

8. ASSIGNMENTS OF ERROR—NOT BASED ON EXCEPTIONS.

Assignments of error upon the trial, not based upon proper and sufficient exceptions will not be considered.

9. SAME—DIFFERENT ERRORS IN ONE.

Different errors cannot be joined in one assignment; and when an assignment groups three radically different questions alluded to in different portions of the charge to the jury, it will not be considered.

10 JURY TRIAL IN FORECLOSURE OF LIEN—NOT A CONSTITUTIONAL RIGHT.

As neither the mechanic's lien nor the action to enforce it existed at common law, the constitutional guarantee of a right to a trial by jury cannot apply to such action; and the allowance of a jury trial is a matter of discretion to be determined by the court, and not a matter of right.

Filed May 26, 1887.

Appeal from the district court of Minnehaha county. Action to foreclose a mechanic's lien.

*S. E. Young* and *Andrew C. Phillips*, for defendant and appellant.

*Wilkes & Wells*, and *C. H. Winsor*, for respondent.

No briefs furnished.

FRANCIS, J. This case comes up on appeal from the district court of Minnehaha county, Fourth judicial district.

The plaintiff brought his action and filed his complaint for the enforcement of a mechanic's lien and for other relief.

The defendant filed an amended answer, denying that the plaintiff was entitled to his lien, and alleging nothing due to

the plaintiff, payment in full, and setting up by, way of counter-claim, damages for bad work done by plaintiff and also arising from his failure to complete the dwelling house within the time agreed upon in the contract, etc.

Plaintiff replied to counter-claim, denying the same.

The case was by stipulation referred by the court to a referee and tried before him.

Then, by another stipulation, the report of the referee was set aside and the case was, as provided in said stipulation tried as a jury case, and the jury returned, as their verdict: "We, the jury in the above entitled action, find all the issues herein in favor of the plaintiff, and assess his damages at the sum of five hundred and ninety-four and nine one-hundredths dollars, including interest to date; and that he is entitled to a lien therefor."

Thereupon the court rendered judgment, in favor of the plaintiff and against the defendant, for that sum, with interest at seven per cent per annum from date of judgment, and for costs, and "further ordered, adjudged and decreed that the said plaintiff do have and hold a lien for said sum of money," upon certain lots and a dwelling house situated thereon, the same property on which the lien was filed and claimed, and that execution issue to the sheriff directing him to sell said premises to satisfy said lien, in the manner provided by law for the sale of real property under execution. The defendant appealed.

The important questions brought up by this appeal, and the views expressed in this opinion, will be the better understood in connection with the complaint, amended answer, reply and stipulations, which are as follows:

"COMPLAINT.

"The plaintiff in his complaint states his cause of action as follows:

"1.   That he is by occupation and trade a contractor and builder, and that on or about the third day of April, 1882, he and the defendant, Andrew C. Phillips, entered into an agree-

ment in writing, a copy of which said agreement is hereto attached marked "A" and made a part hereof, whereby this plaintiff agreed to furnish the materials and erect for the defendant a certain dwelling house according to plans and specifications which also were then and there agreed upon in writing and a copy of which is hereto attached marked "B" and made a part hereof.

"2. That after the making of the said contract above mentioned, and about the same date, this plaintiff and defendant entered into other and further verbal agreement whereby this plaintiff for and in consideration of the sum of six hundred and thirty dollars to be to plaintiff paid by the defendant, agreed to construct and build and furnish the materials therefor, a certain barn and outhouse upon the same premises and land with said dwelling house.

"And plaintiff further avers that during the progress of the work upon said dwelling house plaintiff did and performed, at the request of the defendant, certain other work and made certain changes and furnished extra materials on said dwelling house, all of which were not embodied in nor a part of said written agreement; and the value of said work, changes and extra materials amounts to the sum of ten hundred and twenty-one and 76-100 dollars, as same will more fully appear by the detailed account thereof hereto attached marked "C" and made a part hereof; and the said defendant agreed with the plaintiff to pay him said sum of money above and in addition to the price agreed upon in said written agreement.

"3. That the plaintiff has on his part duly performed all of his agreements, but the defendant on his part has failed to pay the plaintiff the sum of sixty-four hundred and twenty-one and 76-100 dollars due to plaintiff for said work, labor and materials, or any part thereof except the sum of six hundred and thirty dollars to apply in payment for said barn and outhouse, and the further sum of twenty-eight hundred and fifty-one and 64-100 dollars to apply generally upon the amount due for the said work, labor and materials done and furnished in and upon said dwelling house; and there is yet due and unpaid to plaintiff on account thereof the sum of $2,940.12.

4. "That the lands upon which said dwelling house is situated are lots Nos. 15, 16, 17 and 18, and the north half of lot 14, all in block No. 15, in Bennett's addition to Sioux Falls, in Minnehaha county, Dakota Territory, and the defendant was at the time of the making of said agreements and still is the owner thereof.

5. "That on the 18th day of January, 1883, this plaintiff for the purpose of securing a lien upon said premises for the work and materials aforesaid done and furnished, duly filed with the clerk of the district court for Minnehaha county a just and true account of the demand due plaintiff after allowing all credits and containing a correct description of the property charged with said lien, and duly verified, a copy of which is hereto attached marked "D" and made a part of this complaint.

6. That plaintiff has paid the sum of six dollars and fifty cents for drawing and filing the said lien.

"Wherefore plaintiff demands judgment for the sum of twenty-nine hundred and forty-six and 62-100 dollars, ($2,946.-62,) and that the same be adjudged a lien against the lots and dwelling house above described.

"2d. That the said premises, building and appurtenances be sold under the decree of this court by the sheriff of Minnehaha county, and that the proceeds of such sale be applied to the payment of said claim of plaintiff and the costs of this action, and that the plaintiff may have such other and further relief as may to the court seem just and proper. Trans. p. 2.

"The contract marked "A," annexed to the complaint, is as follows:

"This agreement made this third day of April, 1882, between Andrew C. Phillips and Samuel McCormack, both of Sioux Falls, county of Minnehaha, and Territory of Dakota, witnesseth:

"That in consideration of the mutual promises herein contained the parties hereto agree as follows:

"Said McCormack will provide the materials for, forthwith commence and build without delay or intermission, except

from necessities of weather, a house for said Phillips on his lots on the northwest corner block fifteen in Bennett's addition to Sioux Falls, according to plans, designs and specifications to be signed by the parties hereto, and deliver said house, completely finished in every respect ready for occupation, to said Phillips, on or before the first day of September next.

"No departure from plans or specifications shall be made unless assented to by said Phillips.

"Said Phillips may require any alteration in plans or specifications, and if they involve any change of price, such change of price if not mutually agreed upon, shall be left to the determination of some person satisfactory to both parties, or if necesssary to that of three persons, one to be selected by each of said parties, who may select a third referee.

"Said Phillps may claim any damage from defects or departures from contract not assented to by him notwithstanding he may have entered into and occupied said house.

"Said Phillips agrees to pay said McCormack the sum of four thousand, seven hundred and seventy dollars in full for his work and materials, as follows:  When stone work is completed $300.   When frame and roof is sheathed $1,000.   When sided and shingled $400.   When building is ready for plastering $300.   When plastered and chimneys built $750.   When the house is finished $1,020.

"Said McCormack may demand from Phillips at any time good and sufficient security for the payment of any or all said sums of money as a condition of the furnishing said materials and the performance of said work; and said Phillips may at any time, as a condition of any or all of said payments, demand from said McCormack good and sufficient security for the furnishing of any of the materials or the performing any of the work named in the plans and specifications herein referred to and for indemnity against mechanic's liens.

"In witness whereof the said parties have hereunto set their hands, the day and year first above written.

"The words 'from said McCormack' interlined before signing.                                        A. C. PHILLIPS,
"Witness, ARTHUR C. PHILLIPS.              S. McCORMACK.

"Trans. p. 5.

"The specifications marked "B" are annexed to complaint. Trans. p. 6.

"Also account marked "C" save as set out in lien claim. Trans. p. 54.

## "STIPULATION.

"And on the 28th day of April, 1884, the following stipulation was entered into by and between the plaintiff and defendant.

"This stipulation made and entered into this 28th day of April, A. D. 1884, by and between the parties hereto, witnesseth:

1. That the above cause is hereby referred to Frank L. Boyce, Esq., of Sioux Falls, to hear and determine any or all issues of fact that may arise in this action, and to report his findings of fact to the court, within twenty days after the testimony is closed.

2. It is further stipulated that said trial shall commence on the first Monday in June, 1884, and shall continue until tried, under the direction of the said Frank L. Boyce.

3. "It is further stipulated that the defendant may have leave to amend his answer on file herein, at any time prior to the 15th of May, 1884, on condition of paying five dollars costs, and that the plaintiff has leave to reply to said amended answer on or before the 25th day of May, 1884. Trans. p. 20.

## "AMENDED ANSWER.

"The defendant answered the plaintiff's complaint, setting up the following defenses:

"Admits the contract and specifications; the amounts for which plaintiff has given his credit, and that plaintiff has put up certain buildings on his lots situated as alleged in complaint.

2. Denies each and every allegation contained in said plaintiff's complaint, except as herein expressly admitted. Expressly denies that plaintiff has on his part duly performed all of said agreements under said contract; denies that there is

anything due plaintiff upon said contract, or that he is entitled to any mechanic's lien as prayed for, and denies that plaintiff ever completed completed said contract work. Denies that the sum of six hundred and thirty dollars was paid by him to plaintiff in full for the furnishing of the materials for, and the construction of a barn and outhouse as alleged by plaintiff, but states the fact to be, that the said sum was paid to apply generally on the material furnished, and for the construction of the barn and outhouse and dwelling.

"2. Admits with reference to the plaintiff's claim for extra material and work, as set out in said "Exhibit C," that plaintiff did furnish extra material and do extra work upon said dwelling house and as claimed by him, to the amount of, and for which he is entitled to, the sum of four hundred dollars, and no more.

"4. Alleges that he has paid plaintiff, or to his order, or for him, in addition to the three thousand four hundred and eighty-one and 64-100 dollars set out by him, the further sum of two thousand six hundred and one and 95-100 dollars, to-wit:

"Cash, being difference in amount paid plaintiff and the amount for which plaintiff has given defendant credit,

| | |
|---|---:|
| "Under date of May 13, 1882 | $ 34 66 |
| "To cash | 500 00 |
| "On order to T. S. Stratton | 459 00 |
| "On order to Leavitt & Vincent | 385 00 |
| "On order to H. L. Hollister | 875 00 |
| "On order to Morrison Bros | 61 00 |
| "Cash paid J. H. Rice & Co., glass | 68 00 |
| "Cash paid Oliver & Cragin, mantles | 104 00 |
| "Cash paid F. W. Taylor, flooring for dining room and pantry | 30 79 |
| "Cash paid Anderberg & Son, for graining and varnishing hall, parlor and sitting room | 84 50 |

"Making altogether the sum of six thousand and eighty-three and 59-100 dollars.

5. Defendant further answering to the complaint herein,

v. 4 DAK.—33

and for a counter-claim, alleges that the plaintiff built said dwelling house and barn in a bad and unworkmanlike manner, and that he violated said contract:

"First. In the excavation for the cellar; in the cellar walls and cellar windows; and in the inside cellar of said dwelling house.

"Second. In the well and in the cistern and its connections; in the sewer and water-pipes, and in the water closet.

"Third. In changing partitions in front hall, parlor, din-room and pantry in first story, and in the hall, bath room, and two bedrooms in the second story of said dwelling house.

Fourth. In the alcove at head of front stairs, in verandas, roof, and observatory of said house, and in not finishing said observatory.

Fifth. In not bridging the second story floor joist of said house; in not covering the exterior walls with felt building paper, nor the roof with tarred felt; and in not plastering the interior walls in attic, and in not putting in registers.

"Sixth. In the doors in the front hall and dining room, and in the front doors, one pair of sliding doors, two outside doors, and in the transoms and corner heads of said house.

"In the back stairway of said house; and in the cellar stairway and opening for cellar stairs.

Eigth. In the roof and ventilator of said barn.

Ninth. That said dwelling house was not completed for occupancy on or before the time agreed upon in said contract, and defendant was thereby compelled to pay, and did pay, the sum of twenty-five dollars for rent for the month of September, 1882. All to the great damage of this defendant, to-wit: In the sum of eleven hundred and forty six dollars.

"6. And the defendant further answering, says, that in and by said written contract and specifications above referred to is the following clause, to-wit: 'Any details omitted in these specifications which are necessary to make the building or other specified work complete, as to be considered as a part of the contract, the same as if they were specifically mentioned,'

which part of said contract said defendant hereby specially insists upon.

"7. And the defendant further answering says, that in said written contract is the following clause: 'Said Phillips may require any alterations in plans or specifications, and if they shall involve any change of price, such change of price, if not mutually agreed upon, shall be left to the determination of some person satisfactory to both parties, or if necessary, to that of three persons, one to be selected by each of said parties, who may select a third referee'—which part of said contract said defendant hereby insists on.

"8. And the defendant further answering says, that on or about the 9th day of October, 1882, the Farley & Loetscher Manufacturing Co., of Dubuque, Iowa, sued out a writ of attachment against the property of the defendant herein, for the recovery of the sum of $1,273.65 for building materials purchased by the plaintiff herein for said dwelling house, and that said action was pending in the district court of Dubuque county, Iowa, at the time the mechanic's lien herein was filed; and, as this defendant is informed and believes, none of said building material has ever been paid for by said plaintiff McCormack.

"Wherefore this defendant prays,

First. That the proceedings of the plaintiff herein be dismissed with costs.

"Second. That it be adjudged and decreed by this court that this defendant is not indebted, under said contract, to said plaintiff, as set forth in his claim and complaint herein, or in any sum whatever, and that he have no lien on the premises referred to therein, and that all liens or claims of lien on said premises heretofore filed in the office of the clerk of this court be discharged and cancelled of record in said office.

"Third. That said defendant have judgment against said plaintiff for the said sum of eleven hundred and forty-six dollars, by reason of the matters and facts set forth as a counter-claim herein, with interest from the first day of october, 1882, besides costs, and that this defendant have such other and further relief as may seem just to this court.

''REPLY.

''On the 24th day of May, 1884, plaintiff replied to counterclaim set up in defendant's answer, denying generally and specifically each and every allegation thereof.   Trans. p. 19.

''STIPULATION.

''This stipulation made and entered into this 22d day of December, A. D. 1884, in open court, at November term for Minnehaha county, A. D. 1884.

''Whereas the above entitled cause was submitted to F. L. Boyce, Esq., as referee at the April term of this court by stipulation, and whereas the said referee proceeded to try said cause under an order of said court in accordance with aforesaid stipulation and filed his report in said court on the 5th day of December, A. D. 1884, and whereas the defendant moved to have said report set aside, as by his motion filed December 18, A. D. 1884.   Now therefore it is hereby agreed and stipulated by and between the parties to this suit that said report may be set aside by the court, and the cause stand upon the calendar for jury trial at the next term of that court, to-wit:   The April term of the district court for Minnehaha county, and that neither party shall object to the trial by jury, but hereby agrees that it shall be tried by a jury.   It is further stipulated that all the costs of this suit heretofore made, before the referee or otherwise, shall follow and be taxed against the party defeated.   It is further stipulated that the cause shall be tried upon the issue as now made up, and no amendments made without consent.

Done in open court, this 26th day of December, A. D. 1886.
WILKES & WELLS and D. R. BAILEY,
Attorneys for Plaintiff.
C. H. WYNN,
Attorney for Defendant.''

On the request of my associates on the bench, I have carefully reviewed the case brought up for hearing on this appeal.

A mechanics lien did not exist at common law and is a special privilege or remedy *sui generis*, of statutory birth, and

it necessarily follows that there was at common law no means of enforcing what did not exist, and the action to enforce it is also *sui generis*, and of statutory origin. The party entitled to the lien, and the means of enforcing it, can have what the statute gives and no more.

As said, by ALLEN, J., in Mushlitt *et al.* v. Silverman, 50 N. Y. 362: "The lien claimed by the plaintiff is the creature of statute, and depends solely for its validity upon the act creating it. The act is an innovation upon the common law, affecting property and rights of property, authorizing, as it does, property to be encumbered without or against the consent of the owner, and without a resort to legal process or judicial action. Such an act cannot be extended, in its operation and effect, beyond the fair and reasonable effect of the words used."

And this view may well be applied to the action for and the enforcement of the lien, and will aid in the consideration of the nature of the action, and of the means and procedure that may be resorted to for its enforcement. I will now refer to some of the provisions of the Code of Civil Procedure, relating to the remedy or lien called a mechanic's lien.

Chapter 31, Section 655: "Every mechanic or other person who shall do any labor upon, or furnish any materials, machinery or fixtures for any building, erection or other improvements upon land, including those engaged in the construction or repair of any work of internal improvement, by virtue of any contract with the owner, his agent, trustee, contractor, or sub-contractor, upon complying with the provisions of this chapter, shall have for his labor done, or materials, machinery or fixtures furnished, a lien upon such building, erection, or improvement, and upon the land belonging to such owner, on which the same is situated, to secure the payment of such labor done or materials, machinery or fixtures furnished."

Section 662: "Every person, except as has been provided for sub-contractors, who wishes to avail himself of the provisions of this chapter, may file with the clerk of the district court of the county or judicial sub-division in which the building, erection or other improvement to be charged with the lien is

situated, and within ninety days after all the things aforesaid shall have been furnished or the labor done, a just and true account of the demand due him, after allowing all credits, and containing a correct description of the property to be charged with said lien, and verified by affidavit; but a failure to file the same within the time aforesaid shall not defeat the lien, except against purchaser or incumbrancers in good faith, without notice; whose rights accrued after the ninety days, and before any claim for the lien was filed."

Section 663 requires the clerk of the district court to "endorse upon every account the date of its filing, and make an abstract thereof in a book to be kept by him for that purpose, and properly endorsed, containing the date of its filing, the name of the person filing the lien, the amount of said lien, the name of the person against whose property the lien is filed, and a description of the property to be charged with the same."

Section 664 fixes or regulates the priority of such liens as follows: The liens for labor done or things furnished shall have priority in the order of the filing of the accounts thereof, as aforesaid and shall be preferred to all other liens and incumbrances which may be attached to or upon said building, erection or other improvement, and to the land on which the same is situated, or either of them, made subsequent to the commencement of said building, erection or other improvement."

Section 665: "The entire land upon which any such building, erection or other improvement is situated, including that portion of the same not covered therewith, shall be subject to all liens created by this chapter, to the extent of all the right, title and interest owned therein by the owner thereof, for whose immediate use or benefit such labor was done or things furnished; and when the interest owned in said land by such owner of such building, erection or other improvement, is only a lease hold interest, the forfeiture of such lease for the non-payment of rent, or for non-compliance with any of the other stipulations therein, shall not forfeit or impair such liens so far as it concerns such buildings, erections and improve-

ments, but the same may be sold to satisfy said lien, and be removed within thirty days after the sale thereof, by the purchaser."

Section 666 provides for the priority of mechanic's liens over other liens and incumbrances, as follows: "The lien for the things aforesaid, or work, shall attach to the buildings, erections or improvements for which they were furnished or done, in preference to any prior lien or incumbrance, or mortgage upon the land upon which the same is erected or put, and any person enforcing such lien may have such building, erection or other improvement sold under execution, and the purchaser may remove the same within a reasonable time thereafter."

Section 667 furnishes the only means extended by our codes for making the lien available for the collection or satisfaction of the debt upon which it is primarily founded under the contract as follows: "Any person having a lien by virtue of this chapter may bring an action to enforce the same in the district court of the county or judicial sub-division where the property is situated, and any number of persons claiming liens against the same property may join in the same action, and when separate claims are commenced the court may consolidate them. The court may also allow as part of the costs the money paid for filing each lien, and the sum of five (5) dollars for drawing the same."

Section 668: "Upon the written demand of the owner, his agent or contractor, served on the person holding the lien, requiring him to commence suit to enforce such lien, such suit shall be commenced in thirty days thereafter, or the lien shall be forfeited."

Section 669: "Every person for whose immediate use and benefit any building, erection or improvement is made, having the capacity to contract, including guardians of minors or other persons, shall be included in the word owner thereof."

These provisions of law clearly bear out the assertion that the lien and the right to enforce it are peculiarly *sui generis*, unlike, in some respects, any other lien or the means furnished

for its enforcement, the lien itself being almost unique in this particular, viz: that one individual, by complying with certain provisions of the law creating the lien, may secure and hold the right to a valid and effectual lien upon the building, or the building and land, of another without his assent or consent, or knowledge, and against his will, and that such lien, so secured and held, will, when judicially found to exist, take priority and rank over other liens and incumbrances placed upon said building and the land upon which it stands, by the voluntary and solemn act of the owner, prior to the creation of the mechanic's lien.

As noted, our code gives to any person having a mechanic's lien, that is any person who has entitled himself to the lien by complying with certain requirements of law, the right "to bring an action to enforce the same," but the code is silent as to the nature of said action which is left to be determined from the nature of the lien itself and the issues involved in the action.

On behalf of the appellant it is insisted that the action tried in the court below, and now here on appeal, is an equitable action, and the respondent contends that it is an action or proceeding at law.

As provided in Section 12 of the Code of Civil Procedure, "An action is an ordinary proceeding in a court of justice, by which a party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense."

And Section 14: "Actions are of two kinds: 1. Civil. 2. Criminal."

Section 33 (same code) in providing for one form of action, enacts that "The distinctions between actions at law and suits in equity, and the forms of all such actions and suits, heretofore existing, are abolished; and there shall be in this territory hereafter, but one form of action for the enforcement or protection of private rights and the redress of private wrongs, which shall be denominated a civil action."

Section 109 (same code) provides that "All forms of pleading heretofore existing are abolished; and hereafter the forms

of pleading in civil actions in courts of record, and the rules by which the sufficiency of the pleadings is to be determined, are those prescribed by this act."

It is certain, then, that, in this territory, all actions for enforcing or protecting private rights, or for redressing or preventing private wrongs, are to be brought in the one form of a "civil action," whether the issues raised or involved therein are legal or equitable, or both. And an action to enforce a mechanic's lien is an action for the enforcement of a private right. In general a civil action may be either legal or equitable, and, in states where the distinction between a court of law and a court of chancery exists, the legal action goes to a court of law, and the equitable action to chancery.

In this territory, however, "there are no separate courts of law and of equity, and all remedies, legal or equitable, are administered by the same courts or judges, according to the circumstances of the particular case." What might, therefore, be very material in jurisdictions wherein courts of law and of chancery exist independent of each other, and in which the old rule of procedure, as to actions at law and proceedings in equity, is definitely followed and strictly enforced, namely— is the case, to be heard, cognizable in a court of law, or must it be heard in a chancery court—is not of importance in this territory where, as we have seen, such distinction between courts has been abolished, and there is but one form of civil action and no court of chancery separate and distinct from a court of law, the district courts and the supreme court, each, sitting amply clothed with legal and equitable jurisdiction and authority and having, under the organic act, chancery as well as common law jurisdiction.

The important point, then, is not as to the jurisdiction or power of the court, but as to the nature of the action brought to enforce a mechanics lien, not, I repeat, with respect to the existence of jurisdiction and power on the part of the court to hear and determine the action, but with respect to the mode and scope of the exercise of such jurisdiction and power, and the application and effect of the pleadings, the mode of trying

the action, the relief to be granted, the judgment or decree to be rendered, and the office and effect of such judgment or decree.

And in considering these matters we might, naturally and logically, first inquire: What is the nature of an action brought in this territory, to enforce a mechanic's lien? Is it solely an action at law upon contract? Is it purely an equitable action? or has it the nature and elements of both a legal and an equitable action? And if it has some of the essential characteristics of both a legal and an equitable action, which, the legal or the equitable, so predominates as to control the question whether the action is one to be tried before the court alone, the court having the power to submit a disputed question of fact to a jury for their special finding, or is an action to be tried before the court and a jury, and in which the jury may render a general verdict and may also answer such special interogatories as may, by the court, be submitted to them. And, in such an action, can a personal judgment be rendered against the defendant?

I here remark that an action to enforce a mechanic's lien is not one in which either party may of right invoke the aid of our national constitution and demand a jury trial, since, as stated in Hayne on New Trial and Appeal, Sec. 34, page 117: "The constitutional guaranty of a jury trial applies only to the cases in which it was proper at common law."

As neither the mechanic's lien itself, nor the action to enforce it, existed at common law, this constitutional guaranty cannot apply to such actions, and the allowance of a jury trial is a matter of court discretion in such cases, and not a matter of right. It should be carefully observed that we are now speaking of an action brought simply and solely to enforce a mechanic's lien.

Although some very erudite judges have undertaken to hold to the contrary, there is, nevertheless, to a certain extent, a similarity or analogy between a mortgage lien and a mechanic's lien, and the action to foreclose the one and to enforce the other, and the scope and result of the action.

The mortgage and the mechanic's lien are each a special security for a debt, and each attach to property. In each case the remedy and relief consists in having the lien declared a valid charge or encumbrance upon property, and such property adjudged or decreed to be sold to pay and satisfy the debt. And, in the case of both liens, other liens or incumbrances may have to be considered. Also in an action brought simply to foreclose a mortgage, and in an action brought solely to enforce a mechanic's lien, unless provided for by direct statutory law, there cannot be a personal judgment rendered for the debt, against the defendant the debtor, nor a judgment for deficiency. Neither in the absence of statuory provisions can the court bar the equity of redemption.

The learned judge in charging the jury in the trial of this case, in referring to the nature of the action, said: "This is in the nature of an equitable proceeding that under the law may be settled and disposed of in this court. This is an action at law in its nature equitable. As shown by the pleadings, stipulations, and procedure at the trial it, evidently, was not a pure suit in equity, and was of mixed blood."

Mechanic's lien laws exist in most, if not all, of the states and territories, and have been and are the source of much litigation resulting in numerous and widely differing decisions and opinions, generally and necessarily largely based upon the particular provisions of local laws, with respect to the character and extent of the lien, the nature of the action or proceeding to enforce it, the necessary steps or requirements entitling one to it, the mode of procedure and the relief to be afforded in enforcing the lien. In all the decisions, however, there is a similar and recognized vein of certain well established fundamental legal or equitable principles, relating to the general character and nature of the lien itself, but modified, limited, extended or applied under the controling provisions of local law applicable only to cases arising under the particular jurisdiction.

Counsel for respondent in support of their contention that "the enforcement of a mechanic's lien under our statute is a proceeding at law," cite Marsh v. Fraser, 27 Wis. 596, which

was decided in 1871. At that time the definition of an action, in the revised statute of Wisconsin, (R. S. Chap. 122, Sec. 2, Taylor's Revision page 1417) was the same (except the word "prevention" instead of the "punishment" of crimes) as in Sec. 12 of our Code of Civil Procedure, before quoted, and Section 8 same chapter, Taylor's Revision, page 1418, was the same as Section 33 of our said Code of Civil Procedure (also before quoted) abolishing the distinctions between actions at law and suits in equity and the forms thereof, theretofore existing, and providing for one form of action called a "civil action." And the Wisconsin provision for enforcing the lien (Taylor's Revision Chap. 153, Sec. 14, page 1765,) enacted that, "In all cases of lien created by this chapter, the person having a claim filed, in accordance with its provisions, may proceed to recover it by personal action against the debtor, his executors or administrators; or when the plaintiff is a sub-contractor, the owner of the building may be made a party to such action; and the court may render judgment therein which shall be a lien upon such building and premises."

In said case (Marsh v. Fraser) the court remarked: "The only question to be decided is whether an action to enforce a mechanic's lien is an action at law on contract. We have concluded that this question should be resolved in the affirmative; and we hold that these actions are actions at law on contract. They are certainly actions on contract; they are denominated personal actions in the statute; the judgments therein are enforced by execution; and although to a certain extent they proceed in *rem*, yet that circumstance does not necessarily divest them of the character of actions at law. It is true they have some of the characteristics of suits in equity, but these are not sufficiently marked to satisfy us that we should be justified in disregarding all of these *indicia* of actions at law which they present, and in holding that they are suits in equity."

Afterwards, possibly in view of this and other decisions, such legislation was had that (in 1880) in Willer v. Bergenthal, 50 Wis. 474, 480, LYON, J., said: "It was held in Marsh v. Frazer, 27 Wis. 596, that an action brought under Chapter 153,

R. S., was an action at law. But the late revision (Chap. 143) has entirely changed the character of the action, by removing therefrom nearly every feature of a legal action, and substituting therefor all of the essential characteristics of a suit in equity. The present statute denominates the action as one to foreclose a lien (Sec. 3321) and the procedure to judgment is very similar to that in an action to foreclose a mortgage. Formerly the creditor who first filed his lien obtained a priority over other lien creditors. Now he does not. * * * Formerly, also, a personal judgment went against the debtor in the first instance, and the lien was enforced by a sale on execution. Now no personal judgment goes except for a deficiency to be ascertained by a sale, and no execution issues on the lien judgment." See also, Spruhen v. Stout *et al.*, 52 Wis. 518, etc., (1881.)

It is interesting and instructive to note, as illustrating the fluctuations in legislation and judicial decisions, concerning mechanic's liens, not only in Wisconsin, but generally throughout the country, that, in Wisconsin, an action to enforce a mechanic's lien has at different times and under various laws, been judicially declared to be ' a personal action; an action in nature of mortgage with right of redemption under act of 1839;" "a common law remedy under act of 1842, enforceable by *scire facias*, or personal action;" "an action at law on contract;" and "an action equitable in its nature." Counsel for respondent also cite, in support of their contention that an action to enforce a mechanic's lien, in this territory, is an action at law. The State of Iowa v. Eads, 15 Iowa, 117, (1863) in which it was held that, "the enforcement of a mechanic's lien is a proceeding at law, where no equity of redemption exists."

In Iowa, at that time, as in Dakota now, there was but one form of action for the enforcement or protection of private rights, and the redress or prevention of private wrongs, called a civil action, and (unlike our law) the proceedings in a civil action were of two kinds, ordinary, and equitable.

At that time, also, the provision giving the right to enforce the lien were as follows, in Iowa; namely: "Any person

having a lien under or by virtue of this act may bring suit to enforce the same, and to obtain the benefits thereof, in the district court of the county wherein the property on which the lien is attached is situated, without regard to the amount," and the pleadings, practice, process and other proceedings in the several district courts arising under this act (mechanic's lien act) shall be the same as in ordinary civil actions and civil proceedings in said courts, except as herein otherwise provided," and "The court shall ascertain, by a trial in the usual way, the amount of indebtedness for which such lien is established, and render judgment for the same and costs of suit."

In Iowa, then, the law made the suit brought to enforce a mechanic's lien an ordinary proceeding as distinguished from an equitable one, and the court rightly held the proceeding to be one at law.

In Dakota the law is entirely silent as to the form or nature of the action and the proceeding in the one form of action in all civil cases, is one proceeding, and is not divided, as then in Iowa, into two kinds, ordinary and equitable.

Subsequently, (1873) the Iowa Code, Chap. 8, Title 14, embodied substantially the mechanic's lien law as we now have it, with some additions and differences, only one of which we need to mention.    Sec. 2142 provided that "any person having a lien * * * may bring suit to enforce the same," etc., but Section 2510 further provided that "the action for mechanic's lien shall be prosecuted by equitable proceedings, and therewith shall no other cause of action be joined."    And (1876) in Kennedy v. Gauli, 44 Iowa, 547, it was held that "an action to enforce a mechanic's lien is to be prosecuted by equitable proceedings."

The distinction between actions at law and suits in equity, and the forms of such actions and also all forms of pleading, existing before the adoption of our present Code of Civil Procedure, having been abolished, and there being but one form of action for the enforcement or protection of private rights and the redress or prevention of private wrongs, called a "civil action," it follows that the court may, in the same action, hear, try and determine matters of law and matters of equity, and,

with the same hand, administer law and equity, or both, as justice or right may warrant or require, in the particular case, recognizing and maintaining, however, in every instance, the essential and defined distinctions between law and equity and the province and scope of both, which neither the legislature nor the courts have any power to abolish.

As was once said of the New York Code, we may say of our own, that "the union of the two systems of law and equity practice has not enlarged the powers of the new court, either as to legal or equitable jurisdiction in relation to the rights which they may declare, or the remedies which they may enforce."

In an action to enforce a mechanic's lien, the "owner," defendant, may deny any or all of the allegations of the complaint; may set up payment of the whole or a part of the sum claimed to be due; or failure of the plaintiff to furnish the materials, machinery or fixtures, or to perform the labor, according to the terms of the contract; or the bad or inferior quality of such materials, machinery, fixtures or labor; or failure of the plaintiff to comply with a provision of law, or to perform an act, necessary to be complied with or performed, by him, in order to entitle him to the lien; or any legal or equitable defense he (defendant) may have to the action, either with respect to the contract between the parties, the amount claimed to be due, the quantity or character or the value of the materials, machinery, fixtures or labor, the identity, extent and ownership of the building or premises claimed to be covered by the lien, or the extent, validity or enforcement of the lien.

In such an action it is necessary to determine what amount, if any, is due, under the contract between the plaintiff and defendant, upon the account for which the lien is claimed, as unless there is a contract and something due and unpaid on the account thereunder, there is no lien to be enforced, the lien being for the amount due, and the amount due, or adjudged to be due, determining the extent of the lien in dollars and cents.

The ascertainment of the amount due involves a considera-

tion of the contract and all the matters relating to the furnishing of the materials, machinery, fixtures or labor.

Then when it is ascertained that a certain amount is due from the defendant to the plaintiff, the next inquiry arises is this: is the plaintiff entitled to a mechanic's lien to pay and satisfy that amount by the sale of any property described in the lien as filed and in the complaint; and the solution of this question involves an examination of all the steps taken by the plaintiff to secure his lien.

If the court ascertains and adjudges that there is a certain sum due from the defendant to the plaintiff, under the contract between them, and that the plaintiff has a valid and subsisting lien for that sum upon the property described in the complaint, and also adjudges that said property be sold to pay and satisfy said sum, and the property is sold and the proceeds of the sale are applied as directed in the judgment, then the mechanic's lien is enforced even though the proceeds of said sale are insufficient for the payment of the entire sum found to be due, as aforesaid, and the remedy of the plaintiff, so far as his mechanic's lien is concerned, is exhausted.

The only remedy given by statute, in this territory, to one having a mechanic's lien, being "an action to enforce the same," and there being no common law remedy, and no remedy without the statute, it follows that the holder of a mechanic's lien, in Dakota, is entitled, by virtue of said lien, if it be valid, to have the same enforced, by the sale of the property which it covers, and to the application of the proceeds of such sale to the payment and satisfaction of the amount found to be secured by the lien, and unpaid, and of the costs and disbursements of the action to enforce it, including "the amount paid for filing each lien, and the sum of five dollars for drawing the same. This is the extent of his relief, in an action brought only for the enforcement of the lien, so far as the lien itself is concerned. I do not intend here to discuss or decide the right of the lienholder to a personal judgment against the defendant in such action. If it be contended that, under our codes, he is not entitled, in such an action, to a personal judgment for the amount

found to be due to him from the defendant, nor to a judgment or decree for any deficiency that may exist after the sale of the property and the application of the proceeds of such sale, and that he cannot, in such action, have execution against any property of the defendant other than that covered by the lien, then I can perceive no valid reason why he may not bring an action against the defendant for such sum as may remain due from the defendant to him, on the account, after the proper application, in payment, of the proceeds of said sale.

He has exhausted his special remedy and may then resort to his action for money due, as, indeed, he might, in the first instance, have waived his special remedy, or mechanic's lien, and brought his action for money due on account under the contract.

Section 136, of the Code of Civil Procedure, provides that, ' The plaintiff may unite in the same complaint several causes of action, whether they be such as have been heretofore denominated legal or equitable, or both, where they all rise out of: First. The same transaction, or transactions connected with the same subject of action; second, contract, express or implied; (here follow other classes not necessary here to quote. ) But the causes of action, so united, must all belong to one of these classes, and, except in actions for the foreclosure of mortgages, must affect all the parties to the action, and not require different places of trial, and must be separately stated."

And, under our existing laws and system of pleading and practice, a plaintiff, when the pleadings are properly drawn, may, in one and the same action, pray for, and, upon sufficient evidence, receive, a personal judgment against the defendant for the amount found to be due to him, from said defendant, on the contract between them, and also a judgment adjudging the validity of a mechanic's lien held by the plaintiff, for materials, machinery, fixtures or labor furnished or performed by plaintiff, under said contract, upon property of the defendant described in the lien and in the complaint, and directing the sale of said property to pay and satisfy said amount. And

v. 4DAK.—34

that is just what was prayed for and allowed to plaintiff, in this case, under pleadings—complaint, answer and reply—fully warranting it, and giving, at the same time, to the defendant opportunity to set up all his defenses and of which he availed himself.

Most of the twenty-five assignments of error seem to have been assigned from a misconception of the real case actually tried in the district court, with respect to the causes of action, the pleadings, the stipulations, the merits of the controversy, the issues raised, the relief demanded, the defenses set up, the manner and mode of the trial, the verdict and the judgment, some, or all, of which are to be considered and correctly understood, as to their form, substance and scope, in making valid assignments of error.

Whether, under our codes, there could, in such an action, be a judgment or decree for deficiency, as in case of the foreclosure of a real estate mortgage, or a general execution against property of the defendant not covered by the lien, need not now be determined. It would seem, however, that the defendant would be liable to the plaintiff for any balance due upon the judgment, for debt and costs, after deducting therefrom the proceeds of the sale of the property covered by the lien, over and above the proper expenses of such sale, and, there being no decree for deficiency, and no general execution against other property of the defendant, the plaintiff could, by leave of the court, bring his action, upon the judgment, to recover said balance.

The sale of the property covered by the mechanic's lien does not extinguish the debt or the judgment unless the proceeds of such sale are are sufficient to pay and satisfy the same in full, and the plaintiff and defendant, alike, are only entitled to the application of the proceeds of the sale, of the property covered by the mechanic's lien, in or towards the payment and satisfaction of the debt and judgment, and in an action in which there is a personal judgment and a judgment establishing a mechanic's lien and directing the sale of the property adjudged to be covered by the lien, and the proceeds of such sale are in-

sufficient to pay and satisfy the personal judgment, the defendant is still liable to the plaintiff for that portion of the debt remaining unsatisfied, and the judgment continues in force and validity as to the balance due.

In such a case, also, if the plaintiff should fail to establish his mechanic's lien, and the court, or the jury, should so find or adjudge, he might still, on a proper showing, have a general verdict and judgment against the defendant, for the debt due to him from the defendant, on the contract between them, or account, for materials, machinery, fixtures or labor, furnished or performed by the plaintiff, the same as though the existence of the mechanic's lien had not been made an issue in the action. This is, substantially, what the court below charged and which is assigned (16th assignment) as "error in the instructions on the question of personal judgment." There was no error in said instructions.

Were it not for one feature in the case brought up by this appeal, which will next be considered, we would, under some of the errors assigned, be required to further examine and definitely decide the important questions relating to the nature and forms of action and procedure, and modes of trial, thus far alluded to and somewhat discussed in this opinion.

The decision of this case does not, however, call for the expression of any opinion as to what is an action at law upon contract; or an action at law upon contract for the recovery of money only; and what is a proceeding or an action in equity; nor as to what are the distinctions between them; neither does it require us to determine the nature of an action brought in Dakota, to enforce a mechanic's lien; nor to specify what kind of a line of cases are to be tried by the court alone, and what by the court and a jury.

We do not, for the reason just referred to, and which will presently more clearly appear, now decide any of these questions, and have alluded to and discussed them, and some matters connected with them, only so far as was necessary or proper for the purpose of presenting the salient points in this case, and of deciding such of them as are fully before us on the

pleadings and record, and of making clear the decision thereof, and also, by calling attention to their importance, to "pave the way" for the full consideration and determination of said questions whenever they shall be completely presented and argued under fit exceptions and assignments of error. And their definite and final determination will define and fix our procedure and practice in several highly essential and important particulars.

Let us now consider the effect of the stipulations entered into by and between the attorneys for the plaintiff and defendant, in the progress of the action in the district court, and made a part of the record on appeal, and set out in full in the statement of the case in this opinion.

Considering the stipulations, and giving to them their proper place, interpretation and weight, they are found to be the significant and controlling factor in the solution of the case at bar.

In Hines v. The Whitebreast Coal & Mining Co., 48 Iowa, 296, 299, where several parties had commenced actions against a common defendant to enforce mechanic's liens, it was held to be competent for plaintiff and defendant, by agreement, to have united therewith an ordinary action at law, prosecuted by ordinary proceedings, actions in that state being (as we have seen) divided into ordinary actions and equitable actions. . In this (Hines) case the report of the referee was set aside by stipulation, and it was submitted to the court without a jury, and all the cases were tried together and one judgment and decree rendered. And Justice Beck said: "We know of no reason why the parties may not pursue this singular means of settling their rights, in preference to the more regular manner which ought to have been followed."

These remarks are quite applicable to the present case, Stipulations of parties, or their attorneys, in civil actions or proceedings, including stipulations as to the merits of the controversy, or the issues involved. or the form of proceeding, or the time, place or mode of trial, or the verdict, judgment or decree to be rendered, or the form or extent of such verdict,

judgment or decree, and not in violation of any constitutional or jurisdictional right or provision, and not contrary to law, when properly made, in court, during the hearing, and entered in the minutes or record, or reduced to writing and signed and filed in the case are binding upon each party making them and upon the court, according to the plain terms or the fair and clearly apparent intent thereof.

So the stipulations made in the case at bar were binding upon both parties, and were important, and, in several vital particulars, conclusive in the trials of the case below, and are equally so in this court on appeal. And where, as in this case, it is stipulated that there shall be a jury trial, upon the issues made by the pleadings, the verdict of the jury and the judgment of the court, if warranted by the law, pleadings and evidence, will stand, notwithstanding the mode of procedure or trial may not in all respects, have been in accord with the practice to be followed in cases taking their regular course without the intervention of a stipulation.

The defendant (appellant) having once stipulated with the plaintiff (respondent) that the case should be referred and tried before a referee, and having thus consented that it be made a court, and, in a sense, an equity case, and after the trial before the referee, having stipulated with the plaintiff that the report of the referee should be set aside and that the case should be heard and tried before a court and jury, upon the issue as then made up, and having thus made it a jury case, and the stipulation for a jury trial being complete, and containing no provision for, or allusion to, any special findings by the jury, and a final decision by the court, and the case, under said stipulation, having been fully tried and submitted to the jury upon all the issues raised by the pleadings, and the jury having rendered a general verdict covering all the issues raised, and the court having given judgment in accordance therewith, he (the defendant) cannot now on appeal raise the question that the case is one in equity, in which the jury should have made only special findings, leaving the final decision for the court, and that the case was, therefore, improperly tried; neither can he allege

any error in the rendering of a general verdict by the jury, since, by his stipulation, the case was all submitted to the jury and their general verdict covered the entire case. He is bound by his stipulation and the result of it, and so is the plaintiff who joined in the stipulation, and neither of them can avail himself of any error in practice or procedure naturally or directly resulting from the carrying out of the plain intent or terms of the stipulation, unless such error involves the violation of some essential constitutional provision or the subversion or impairment of some inviolable right that cannot be waived nor stipulated away. This view will of itself dispose of much of the argument in the briefs for both appellant and respondent, and of the exceptions relating to the nature of the action, the form of the trial, the general verdict of the jury and the judgment of the court, and of some of the exceptions to the rulings of the court and to the charge.

It may be said here, however, that the verdict is sufficient as a general verdict, under Section 260, Code of Civil Procedure, which says: "The verdict of a jury is either general or special.

"A general verdict is that by which they pronounce generally upon all or any of the issues, either in favor of the plaintiff or defendant.

"A special verdict is that by which the jury find the facts only, leaving the judgment to the court."

The three California cases cited on this point by appellant, viz: 51 Cal. 278; 53 Cal. 37, and 19 Cal. 101, will be found to relate to special verdicts or findings, and to assert the well established rule that the court or a jury should find or pass upon all the issues.

Counsel for appellant seem to have overlooked, or have not rightly comprehended, the distinction existing between a special verdict or special finding of facts, and answers to interogatories propounded to the jury to be answered by them at the same time that they render a general verdict, and in one part of their brief have treated the action, now before us, as one in which the court below submitted to the jury certain questions

of fact for their special verdict or special finding thereon, in order that the court might draw conclusions of law therefrom and render judgment accordingly, and they assign as error (4th assignment) "That no findings of fact were made by the jury, and no conclusions of law by the court," thus considering it as an equity cast.

They also assign as another error, (1st assignment) "Error in submitting the case to the jury as if it were an action on a contract, and for the recovery of money only," and also (2nd assignment) "Error in not stating in the order for a jury trial the questions of fact to be tried."

Thus they ignore and seek to evade the effect of their stipulation for a jury trial, which stipulation, as we have noted, fully warranted the submission of the entire case to the jury and the rendering by them of a general verdict, and which also rendered unnecessary, in fact made improper, the course which they insist should have been taken by the court at the trial, and for its failure to take which they assign as error, and which stipulation, likewise, makes the three assignments of error, just mentioned, of no application or avail.

The appellant as his third assignment of error alleges, "Error in the verdict in that it contains a conclusion of law."

Neither in the abstract nor in the transcript does it appear that any exception was taken to the verdict at the time it was returned or at any other time, and the first objection to the verdict on this ground appears in said assignment of error.

The right of the plaintiff to the mechanic's lien sought to be enforced in the action was one of the main issues therein, and it was a question of law to be determined after and upon the determination of certain questions of fact to be ascertained from the record evidence and oral testimony, I will therefore in view of the question raised, waive the absence of an exception and briefly pass upon the point. It was submitted to the jury and in their verdict they said: "We, the jury, * * * find all the issues herein in favor of the plaintiff, and assess his damages at the sum of $594.09, including interest to date; and that he is entitled to a lien therefor."

This finding of the jury in their general verdict, that the plaintiff was entitled to a lien, was right, and was a correct conclusion of law under the evidence. Neither the submission by the court of a question of law to a jury, nor the finding of the jury thereon, is good ground for exception, or assignment of error, provided such finding of the jury is right in law, under the evidence in the case. See Minneapolis & St. Louis Railway v. Columbus Rolling Mill, 119 U. S. Rep. 149, 152.

The fifth assignment of error asserts ''Error in instructing the jury that the findings of fact submitted had nothing to do with their verdict.''

The exact language of the court in its charge to the jury, confined to the limits of the assignment, as shown in the abstract and in the transcript, was as follows: ''With reference to these special findings they have nothing to do with the verdict.'' This sentence or part of a sentence (which it in fact is) taken alone, as an isolated statement, undoubtedly contains an erroneous assertion in the abstract. But when taken in connection with the rest of the sentence, and with the remainder of the charge and the case before the court and the jury, and it must be so considered; it ceases to be harmfully erroneous, and it is manifest that, taken in such connection, its vitality is lost in the particular case and it affords no efficacious ground for exception or the assignment of error thereon. It is well here to say that while ''special findings'' are frequently alluded to in the record and briefs, the only special finding that is clearly shown in the transcript to have been submitted to the jury was the one finding relating to the filing of a just and true account by plaintiff.

The first ground stated in the notice of intention to move for a new trial, and in the motion itself, was the following alleged ''irregularity in the proceeding,'' viz: ''In that the general verdict of the jury was received by the court and the jury discharged without said jury answering or being required to answer the special finding which was, at request of defendant, submitted to the jury by the court to be answered by them.'' And in the sixth assignment this is assigned as ''Error in dis-

charging the jury without their answering any of the findings of fact submitted to them by the court."

The record does not show that any objection or exception was made or taken to this action of the court when the jury rendered their verdict and before they were discharged, or at any time, or in any way other than by alleging as ground for the granting of a new trial, and assigning it as error.

A proper consideration of this alleged ground of error renders necessary some reference and conclusion with respect to general verdicts, special verdicts and special findings, and the province and power of the court and the jury in relation to the same.

Section 261, Code of Civil Procedure, provides that: "In an action for the recovery of money only, or specific real property, the jury, in their discretion, may render a general or special verdict. In all other cases the court may direct the jury to find a special verdict in writing upon all or any of the issues, and *in all cases* (necessarily including the case at bar) may instruct them if they render a general verdict, to find upon particular questions of fact to be stated in writing, and may direct a finding thereon. The special verdict or finding must be filed with the clerk and entered on the minutes. Where a special finding of facts is inconsistent with the general verdict, the former controls the latter and the court must give judgment accordingly."

It will be seen that this section plainly provides for three distinct acts or things, namely, a general verdict; a special verdict, and a special finding of fact. The jury, in an action for the recovery of money only, or specific real property, may render either a general or a special verdict, in their discretion. And in all other cases the court in its discretion, may direct the jury to find a special verdict in writing, upon all or any of the issues. Then follows a broad provision giving the court power, to be exercised in its discretion, in all cases to instruct the jury, if they render a general verdict, to find upon particular questions of fact, to be submitted to them in writing, and the court may direct the finding to be in writing.

The jury cannot in the same case return a special and a general verdict, or a special verdict and a special finding, but they may render a general verdict and return with it a special finding of fact. If the special finding and the general verdict cannot stand together, by reason of the former being inconsistent with the latter, the special finding. survives and controls and the court must give judgment in accordance therewith. But nowhere in our laws is there any provision or requirement that makes a general verdict invalid when the jury rendering it have failed to return a special finding upon particular questions of fact submitted to them in writing, neither does any good reason indicate or prove such invalidity, particularly when the general verdict covers and determines all the issues in the case. There is nothing in this Section 261 nor elsewhere in the codes giving to any litigant the right to decide or dictate what shall or shall not be submitted to the jury, or the right to have any question submitted to the jury and a special finding by them thereon.

The question as to what shall be submitted to the jury for their general or special verdict or for their special finding, or whether or not anything shall be submitted to them, is, in all cases, a question for the determination of the court, and any action, decision or ruling of the court in this regard, or any failure of the jury to return a special finding upon any question submitted to them for that purpose, may, if proper exception thereto is saved, be inquired into on appeal to this court. And where all the material issues in a case are covered in the charge of the court, and are fairly and fully submitted to the jury, and the jury render a general verdict on all of said issues, neither the verdict of the jury nor the judgment of the court in accordance therewith, will be set aside because the court refused to submit to the jury in the shape of a separate interogatory for their special finding thereon, a question, however material or conclusive, which was substantially covered by and alluded to and charged upon, in the charge of the court, and submitted to the jury, and which must, necessarily, have been considered and determined by the jury in arriving at their general verdict. See Moline Plow Co. v. Gilbert *et al.*, 3 Dak. 239.

The true design, object and purpose of a trial before a court and jury, or a court without the jury, is to have a hearing and decision of the matters in controversy or the issues raised in the action, and when it clearly appears from the record, findings, verdict, judgment or decree that this has been done or accomplished, and all the issues have been considered and decided, the mere form of the findings, verdict, judgment or decree, outside of matters of jurisdiction and the like, or the manner or mode of expressing them, is not of grave importance save in relation to correctness and uniformity in practice which should always be kept in view.

It is not any question that the ingenuity or curiosity of counsel, or their desire to mistify or confuse the jury with conundrums of fact or law, may frame, that is to be submitted to a jury. The question to be submitted must not only be pertinent but it must be one the answer to which will have some conclusive effect in determining the case, or in solving a material issue in it. And the action of the court in submitting or in refusing to submit a question to the jury for a special finding by them, or in discharging the jury without their having made such special finding is, on appeal, to be viewed and tested in connection with all the circumstances of the particular case the province and aim of the appellate court being to correct only such errors as have affected some substantial right or interest of the party appealing. This court does not set to decide mere abstract principles of law which have no bearing upon the case before it, nor to gravely consider exceptions or assignments of error based upon propositions existing only in the fertile imaginations of zealous attorneys. Life is too short, time and intellect too valuable, and the taking of exceptions and the assigning of errors too easy to warrant such a course.

Having thus referred to general and special verdicts and special findings, and the province and power of the court and the jury in relation thereto, and having found that the submission of a question to the jury for their special finding thereon, is discretionary with the court, the action of the court in submitting or refusing to submit the question to the jury being re-

viewable in this court on appeal, on proper exception and error assigned, I now inquire as to the province, power and duty of the court with respect to receiving the general verdict of the jury when a question has been submitted to them for their special finding, and discharge them without their having returned said special finding.

The interogatory submitted to the jury, and which they did not separately and specially find upon, was: ''Did the affidavit and lien made and filed by plaintiff January 16, 1883, contain a just and true account of the demand due him after allowing all credits?''

It is evident from the case, and from the evidence submitted before the jury, and must, therefore, have been evident to them, indeed it was practically admitted in the argument before us, that in the affidavit and lien filed by the plaintiff he claimed more than was actually due, and so, strictly, the affidavit and lien claim did not contain a just and true account of the demand due the plaintiff after allowing all credits. In fact, the jury so found and answered the question in the negative, in finding $594.09 to be due to the plaintiff instead of the sum of $2,940.12 claimed in the statement and affidavit filed by him, and the general verdict was, as to the debt, arrived at from the ascertainment of the amount actually due.

Under the charge of the court the general verdict of the jury covers and includes the issue raised or contained in the special question submitted to them, and which they failed to answer separately. There was no error in receiving the general verdict of the jury and discharging them without their having answered said question by returning a special finding thereon. The question, however answered, would not have been conclusive of the case. In saying this I refer only to the simple answers ''Yes'' or ''No,'' or an unqualified affirmative or negative answer. The jury might have answered it in the affirmative or in the negative, and, in either case, have found the same general verdict returned by them, and there would have been no legal inconsistency between the general verdict and the special finding, and the general verdict would have been good.

It is true there are some conflicting opinions, but the better and more just rule is that a claim or statement, in the account filed, of a greater sum than is really due after deducting or allowing all credits, will not invalidate a mechanic's lien, unless the claim or statement is wilfully false. "If too large a sum be honestly demanded the lien will not thereby be defeated." Barber v. Reynolds, 44 Cal. 533; Busfield v. Wheeler, 14 Allan (Mass.) 139.

The charge of the court on this point attempted to be covered in the eighteenth and nineteenth assignments of error, hereinafter noted, was not erroneous. "To the extent that relevant questions properly put to the jury remain unanswered there is a mistrial." "No question should be put to a jury which is not material to the inquiry." COOLEY, J., in Crane v. Ruder, 25 Mich. 304.

"The failure to require an answer to a question not conclusive is not error." COOLEY, J., in Banner Tobacco Co. v. Jameson, 48 Mich. 460, 464, 465.

Furthermore, had the question been a vital one, and a special finding upon it by the jury material or conclusive, and had their failure to make and return such special finding constituted good ground for objecting to the court receiving the general verdict of the jury and discharging them without their being required to make and return with their general verdict such special finding, then it would have been the duty of the appellant, in the return of the general verdict by the jury, to object to their discharge on that ground, and to then enter his exception to the overruling of his objection and the receiving of the general verdict and the discharge of the jury without their being required to make and return such special finding.

"Where a verdict fully disposes of the issues and authorizes a final judgment, a *venire de novo* will not be awarded, because of the failure of the jury to return a definite answer to an interogatory. If the question presented by the interogatory be material and the party at whose request it was propounded desire to insist on a definite answer, he should object on the ground of such failure, to the receiving of the verdict or the

discharge of the jury." McElfresh v. Guard *et al.*, 32 Ind. 409; Peters v. Lane *et al.*, 55 Ind. 393; Ogle *et al.* v. Dill *et al.*, 61 Ind. 439; Carpenter v. Galloway, 73 Ind. 424; West v. Cavin's Executor, 84 Ind. 265; Bedford & Springfield R. R. Co. v. Rambolt, 99 Ind. 551.

While in the cases above cited, in the 55th and 73d Indiana, it is held that the failure of the court to require the jury to answer a direct and pertinent interogatory submitted to them, is ground for a *venire de novo*, the holding is based upon the saving of the exception by the party seeking a new trial, by objecting to the jury until they have answered the interogatory. The court can only direct, and cannot compel, a jury to answer an interogatory, and may, in its discretion, receive their general verdict and discharge them without their having separately answered said interogatory, and this act of the court is subject to review on appeal. But the party desiring to take advantage of the situation must before the discharge of the jury make proper objection thereto and proper exception to the court's action in overruling his objection and discharging the jury, and when he does this and assigns error thereon, by a sufficient assignment, he is entitled to a review of the question of the duty of the court and the jury with respect to the special finding, and also as to any injury to his rights or interests in the action resulting from the failure of the jury to make the special finding desired.

The seventh assignment of error is "Error in judgment and decree in ordering execution to issue for the sale of the premises to satisfy the lien in the manner provided by law for the sale of real property under execution."

This error was doubtless assigned on the erroneous theory of counsel for appellant, that the case really tried in the district court was an action in equity, and that the judgment should have followed the form and substance of a decree in strict chancery practice, under which practice the sale takes place by virtue of the decree and without the intervention or issue of an execution. Under our present codes judgments directing or requiring the sale of property are enforced by what is commonly known as an "execution."

Section 308, Code of Civil Procedure, contains a provision that "When the judgment requires the sale of property the same may be enforced by a writ reciting such judgment, or the material points thereof, and directing the proper officer to execute the judgment, by making the sale and applying the funds in conformity therewith."

In an action to foreclose a mortgage, which is in equity the decree is an execution in itself and provides, in its own body, for the time, place, manner, etc., of the sale.

Section 665, (quoted *ante*) provides for the "sale" of "buildings, erections and improvements," "to satify said lien."

Section 666, (also before quoted) enacts that the "building, erection or other improvement" may be "sold under execution." This seventh assignment of error, therefore, vanishes.

The eighth assignment of error is "Error in decreeing a lien on the land and one building for labor and materials done and furnished for three buildings."

This assignment of error falls when confronted by the fact that the lien adjudged to the plaintiff, by the district court, was the identical lien filed and also claimed in the complaint, and it was furthur adjudged that he should have and hold this lien upon the very same property, viz: one building (a dwelling house) and certain lots; upon which the lien was filed and upon which it was claimed as a lien in the complaint in the action, and upon no other property. The judgment covering the same property upon which the lien was filed and claimed, and all of it, and no more.

The ninth assignment of "error in enlarging the verdict by adding in the decree a lien on certain premises which lien is neither found by the court or the jury," has nothing to stand upon. The plaintiff claimed that a certain sum was due from the defendant to him, and demanded judgment therefor and the enforcement of a mechanic's lien, which he claimed to hold, to pay and satisfy the same.

The jury found a certain sum due from defendant to plaintiff and that he was entitled to a lien therefor. This referred only to the lien filed and claimed in the complaint, the exist-

ence or non-existence of which was one of the main issues in the action, and the court, in accordance with the verdict, ordered, adjudged and decreed that the plaintiff should "have and recover" from said defendant the same sum that the jury found was due, and also that he should "have and hold," for said sum, the lien which the jury had found he was entitled to, and upon the same, and all the property upon which the lien was filed and claimed, and being the same property alleged in the complaint to be covered by said lien.

When it clearly appears from the evidence shat the plaintiff has complied with all the provisions of our law which entitle him to a mechanic's lien, then in the law he has and possesses the lien, and the jury or the court in finding him entitled to the lien, and the court in adjudging that he shall have and hold it, but announce and assert what the law and the evidence have already determined and established.

The tenth assignment of "error in decreeing a sale of the premises instead of the right, title and interest of the defendant therein," may be dismissed as untenable, with the remark that even if what is therein assigned really constituted error on the part of the court it would not be one affecting any substantial right or interest of the defendant. The extent of the lien, as to the property, or rather, the extent to which the property is subject to the lien, is determined in Section 665, Code of Civil Procedure, when it says: "The entire land upon which any such building, erection or other improvement is situated, including that portion of the same not covered therewith shall be subject to all liens created by this chapter, to the extent of all the right, title and interest owned therein by the owner thereof, for whose immediate use or benefit such labor was done or things furnished."

Section 342, same code, provides that "upon a sale of real property the purchaser is substituted to, and acquires all the right, title, interest and claim of the judgment debtor thereto;" and this is what a sale of real property under an execution, in this territory, transfers, and is what may be conveyed to the purchaser under and by virtue of the sale.

The sale, then, of the said real property of the appellant, directed in the judgment complained of to be sold under execution, would transfer all the right, title, interest and claim of the said appellant therein or thereto, to the extent of his said right, title, interest or claim, and no more.

To what extent the appellant was the owner of the property in question, or what interest he had therein, does not appear (except that the lots in question, in the contract signed by the appellant and in his amended answer are termed "his lots," nor is it material in considering this alleged error, since the sale of the property covered by the lien, under an execution, can and will only transfer or take away his right, title, interest or claim in or to said property, and of which by the result of the action he is rightly deprived under the law unless he pays the sum found to be due from him to the plaintiff. He cannot, therefore, complain of the form of the judgment on the ground stated in his said tenth assignment of error.

An examination of the transcript shows that the eleventh assignment of "Error in admitting the testimony of the plaintiff as to the price and reasonable worth of alleged extras, the price of which had not been agreed upon by the parties, nor determined by arbitration, as provided in the contract," is not based upon any exception and, for that reason, is not assignable on appeal. But even if it could be assigned it would be of no avail, as the admission of the testimony was not error.

The twelfth assignment of "Error in excluding questions propounded to the witness Marson on general objections made by plaintiff," and the thirteenth assignment of "Error in excluding testimony of witness Stratton, and in the remarks made by the court in relation thereto," were not alluded to in brief of appellant, and need not, therefore, be considered. Still I will add that neither of the acts complained of in these assignments constituted error.

The appellant in his fourteenth assignment of error alleges "Error in excluding the testimony of the defendant as to one cash payment of $500, and in ruling such payment out of the

case altogether." This assignment of error was not satisfactorally discussed in the brief of appellant, but an examination of the case demonstrates that the court committed no error in this regard.

The fifteenth assignment is "Error in the oral and written instructions on the question of the substantial performance of the contract." This is no proper assignment of error. The error in the instructions complained of should be specifically pointed out, and where this is not done the court will, as a rule, not consider it. Having, in this instance, inspected the transcript, I find that the said oral and written instructions taken as a whole, were not erroneous.

The sixteenth assignment of "Error in the instructions on the question of personal judgment," is, for the same reason, not properly assigned, but has already been disposed of.

The appellant in his seventeenth assignment alleges "Error in instructing the jury that the allowance of the damages set out in defendant's counter-claim was contingent upon their first finding a sum of money due from defendant to plaintiff." From a careful reading of the charge, in the transcript, I am unable to discover any instruction of the court in the language or words of this assignment which is not a proper one in this that it does not designate the particular portion and words of the charge claimed to be erroneous. Then, also, on turning to that portion of the charge to which it may reasonably be inferred the appellant, in this assignment intended to refer, we find, from the transcript, that no exception was taken thereto. This assignment of error will not, therefore, be considered.

The eighteenth assignment is "Error in instruction as to the intention of plaintiff in not allowing all credits in the lien filed." This assignment is also subject to the criticism that it does not specifically state or designate the words or statements claimed to be erroneous, and may be ignored by the court. But as a reference to the transcript shows that an exception was taken to the portion of the charge relating to the intention and good faith of the plaintiff in filing his lien, I will consider the alleged error, or rather the error probably intended to be as-

signed, and say that a reading of the entire remarks of the court, in its charge, upon the matter of the intention of the plaintiff in filing his lien and allowing credits, makes it clear that they were not error.

The nineteenth assignment is "Error in giving contradict-ory instructions to jury, particularly upon the question of arbitration; on the necessity of making a true and accurate statement, and on the claim of defendant as to completion of building." This assignment is not properly made. It groups three radically different questions alluded to in separate portions of the charge, and does not specifically point out or definitely designate or indicate what particular statements of the court are attacked, or what words or sentences in the charge constitute the alleged contradictory instructions, or wherein they are contradictory, or the place or point, in the charge, where they appear. And the transcript contains no exception upon which even a proper assignment of error could be founded with respect to either of said questions.

Different errors cannot be joined in one assignment. And the same error, such as "contradictory instructions," should not be alleged in one assignment with respect to different and separate instructions in relation to matters or points entirely independent of each other.

For the reasons just stated this attempted assignment of error will not be passed upon. This court cannot be required to wander through a case, or the charge of the court below, on an exploring expedition with the keen scent of reason, to find, if possible, or determine the existence of, some contradictory instructions, or some error, intended to be covered by a given assignment of error. Counsel must specifically assign the error and, in the assignment, so designate what is complained of as error as to put the finger of the court upon it.

Attorneys should assign such errors only as are to be presented to the appellate court on the argument, and in preparing their briefs should plainly and concisely state the points upon which they rely for affirmance or reversal, and take them up *seriatim.*

One live point is better than any number of weakly ones, and one well established legal principle or conclusion applicable to the case before the court, or clearly demonstrated fact decisive of the case, is more effectual than volumes of false or abstract reasoning, or misty or reckless statements.

In this connection I call attention to the following provisions of Rule 16 of this court: "In civil actions and proceedings, the appellant, or plaintiff in error, shall file with the clerk of this court, or append to the transcript, an assignment of errors, which assignment need follow no stated form, but must in a way as specific as the case will allow, point out the errors objected to, and only such as he expects to rely on and ask the court to examine. Among several points in a demurrer, in a motion, in the instructions, or in other rulings excepted to, it must designate which is relied on as error, and the court will, in its discretion, only regard errors which are assigned with the requisite exactness." See also, Caulfield *et al.* v. Boyle, 2 Dakota, 464, and Bush *et al.* v. The Northern Pacific R. R. Co., 3 Dakota, 445.

In this rule and in these decisions we have followed a long line of ancestors, and turned into the clear and well defined current of legal decisions and practice with repect to the assignment and review of errors.

The twentieth assignment is "Error in refusing to give the written instructions submitted by defendant same as set forth in instructions refused."

The twenty-first assignment is "Error in giving to the jury the written instructions submitted by plaintiff same as set forth in instructions given." These may be considered together.

Due examination shows that the refusal to give the instructions referred to in said twentieth assignment was not error, and that the giving of them would have been error, and also shows that the giving of the instructions alluded to in said twenty-first assignment was not error and that, on the other hand, the refusal to give them would have been erroneous. The remaining assignments of error are;

Twenty-second assignment, "Error in denying motion to set aside verdict and for new trial."

Twenty-third assignment, that "The court had no jurisdiction to render judgment against defendant."

Twenty-fourth assignment of "Error in the judgment."

"Twenty-fifth assignment that "The judgment is against law."

Two things are evident, namely: There is nothing in these four assignments of error on the merits, and none of them are properly assigned.

All the errors assigned, or endeavored to be assigned, by the appellant, having been passed upon, and no error calling for a reversal having been presented to the court, the judgment of the district court is affirmed.

Justices PALMER, McCONNELL, and CHURCH, concurring.

Chief Justice TRIPP and Justice THOMAS concur specially in the conclusions reached by the opinion.