#29207-a-SRJ
**2020 S.D. 65**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

  v.

JOSEPHINE RAE MCREYNOLDS,                    Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE SUSAN M. SABERS
Judge

* * * *

JASON R. RAVNSBORG
Attorney General

BRENT KEMPEMA
Assistant Attorney General
Pierre, South Dakota

Attorneys for plaintiff
and appellee.


MARK KADI of
Minnehaha County Office
  of the Public Advocate
Sioux Falls, South Dakota

Attorneys for defendant
and appellant.

* * * *

CONSIDERED ON BRIEFS
AUGUST 24, 2020
OPINION FILED **11/24/20**

JENSEN, Justice

[¶1.]     A jury convicted Josephine Rae McReynolds of simple assault on a law enforcement officer.  McReynolds appeals, arguing that the circuit court erred by denying her motion for a judgment of acquittal and instructing the jury on the legality of the initial encounter between McReynolds and law enforcement.  McReynolds also argues that the circuit court violated her confrontation rights under the Sixth Amendment during the subsequent habitual offender trial by admitting evidence of McReynolds's prior felony conviction without providing her an opportunity to cross-examine the custodian of the record.  We affirm.

## Facts and Procedural History

[¶2.]     On September 14, 2018, at approximately 4:00 a.m., Sioux Falls Police Sergeant Martin Hoffman encountered a vehicle stopped in a turning lane on Minnesota Avenue with its hazard lights on.  The vehicle was unoccupied; however, Sergeant Hoffman noticed an individual, later identified as McReynolds, walking away from the vehicle.  Hoffman asked another officer, Logan Watson, to contact the individual while Hoffman investigated the vehicle.

[¶3.]     Hoffman observed a label with the name "Josephine Rae McReynolds" inside the vehicle in plain view.  Simultaneously, Officer Watson spoke with McReynolds who denied any association with the vehicle and claimed she had seen someone else associated with the vehicle.  McReynolds also began recording the encounter with Watson.  McReynolds then continued to walk further down the sidewalk.

[¶4.]     Hoffman advised Watson of the name he found that was associated with the vehicle.  Watson returned to her patrol vehicle, ran the name in the law

enforcement database, and discovered McReynolds had an outstanding arrest warrant for failure to appear. Watson identified McReynolds as the person she had just encountered from a photograph in the database.

[¶5.] After Watson identified McReynolds, Watson approached her a second time. A third officer, Scott Seiner, also arrived at the scene to assist. McReynolds began recording the officers with her cell phone and began walking away from the officers. Officer Seiner commanded her to stop.

[¶6.] Instead, McReynolds ran, and Watson and Seiner gave chase. As Watson reached McReynolds, McReynolds turned around swinging her right hand toward Watson's head. McReynolds was holding her cell phone in her right hand and struck Watson in the back of the head with the device. Watson stated that as McReynolds turned, she swung her right hand downward in a "hammer motion." Seiner observed McReynolds swinging her right hand in a similar downward motion as she turned towards Watson. McReynolds was taken to the ground and placed in custody. Watson received a laceration that required medical attention.

[¶7.] McReynolds was charged with eight counts, including four alternative counts of simple assault against a law enforcement officer in violation of SDCL 22-18-1.05. Count two, the charge on which she was ultimately convicted, alleged that McReynolds committed simple assault under SDCL 22-18-1(2) by "recklessly caus[ing] bodily injury" to Watson.[1] The State also filed a part II information under

---

1. In addition to Count 2, the State alleged alternative counts for simple assault against a law enforcement officer under subsections (1), (4), and (5) of SDCL 22-18-1. The indictment also included misdemeanor offenses for obstruction of an officer and drug-related offenses.

the habitual offender statute SDCL 22-7-7, alleging that McReynolds had previously been convicted of a felony.

[¶8.] Prior to trial, McReynolds filed a motion in limine requesting the circuit court to exclude evidence of the outstanding arrest warrant. The court granted McReynolds's motion and cautioned that McReynolds would "open the door" to this evidence by suggesting that law enforcement did not have a basis to confront or stop McReynolds. At trial, Watson testified that she identified McReynolds as the person associated with the vehicle, without referencing the warrant. Following McReynolds's cross-examination of Watson, the circuit court denied the State's request to introduce McReynolds's failure to appear warrant, concluding that defense counsel had not "opened the door" for this evidence during cross-examination.

[¶9.] At the conclusion of the evidence, the State proposed instruction 16:

> At the time of this incident, the police officers lawfully came into contact with the defendant and the legality of that contact is not in dispute.

The circuit court gave the instruction over McReynolds's objection. The court also denied McReynolds's motion for a judgment of acquittal. The jury returned a verdict finding McReynolds guilty of one count of simple assault against a law enforcement officer under SDCL 22-18-1(2) and one count of obstruction.[2]

[¶10.] A court trial was held on the part II habitual offender information on July 10, 2019, that alleged McReynolds had previously been convicted of a simple

---

2. The State dismissed the drug-related charges and the jury acquitted McReynolds on the three alternative counts of simple assault and the other count of obstruction.

assault against a law enforcement officer in Codington County. A jailer from Codington County testified that he fingerprinted McReynolds on July 2, 2013, when she was arrested for simple assault against a law enforcement officer. A Minnehaha County jailer testified that he fingerprinted McReynolds when she was arrested for the instant offense of simple assault against a law enforcement officer on September 14, 2018. An analyst from the South Dakota Forensic Laboratory identified McReynolds as the individual from whom both sets of fingerprints were taken. Over McReynolds's objection, the circuit court received a certified judgment of conviction from Codington County showing that McReynolds had previously been convicted of simple assault against a law enforcement officer on October 23, 2013. The circuit court sustained the habitual offender information, finding that McReynolds had a prior felony conviction from Codington County. On November 1, 2019, the circuit court sentenced McReynolds to five years in the state penitentiary, with one year suspended. McReynolds raises three issues in her appeal to this Court.

### Analysis and Decision

1. ***Whether the circuit court erred when it denied McReynolds's motion for a judgment of acquittal.***

[¶11.] A question regarding the sufficiency of the evidence to sustain a conviction is reviewed de novo. *State v. Morse*, 2008 S.D. 66, ¶ 10, 753 N.W.2d 915, 918. This Court considers "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Ware*, 2020 S.D. 20, ¶ 12, 942 N.W.2d 269, 272. "If the evidence, including circumstantial evidence and

reasonable inferences drawn therefrom sustains a reasonable theory of guilt, a guilty verdict will not be set aside." *State v. Morgan*, 2012 S.D. 87, ¶ 10, 824 N.W.2d 98, 101.

[¶12.] A violation of SDCL 22-18-1.05 occurs if a "[s]imple assault, as provided in § 22-18-1, i[s] committed against a law enforcement officer . . . while the officer . . . was engaged in the performance of the officer's . . . duties . . . ." A simple assault is committed under SDCL 22-18-1(2) when a person "recklessly causes bodily injury to another[.]" SDCL 22-1-2(d) defines "reckless" as importing:

> a conscious and unjustifiable disregard of a substantial risk that the offender's conduct may cause a certain result or may be of a certain nature. A person is reckless with respect to circumstances if that person consciously and unjustifiably disregards a substantial risk that such circumstances may exist[.]

[¶13.] McReynolds argues there is insufficient evidence to sustain a conviction for simple assault because her actions were not reckless. At most, she contends that she was negligent. McReynolds claims that when Watson approached her from behind, she panicked and reacted by immediately turning without any conscious decision to disregard a known risk to the officer.

[¶14.] This Court has previously discussed the distinction between recklessness and negligence, focusing on the state of awareness of the individual. *See State v. Larson*, 1998 S.D. 80, ¶ 14, 582 N.W.2d 15, 18; *State v. Janklow*, 2005 S.D. 25, ¶ 19, 693 N.W.2d 685, 693; *State v. Olsen*, 462 N.W.2d 474, 476 (S.D. 1990). "The difference between reckless behavior and negligent behavior is primarily measured by the state of mind of the individual." *Janklow*, 2005 S.D. 25, ¶ 19, 693 N.W.2d at 693. The key question to determine whether conduct is reckless or

negligent "depends upon [one's] awareness of the risk [one's] behavior creates." *Larson*, 1998 S.D. 80, ¶ 14, 582 N.W.2d at 18. "[F]or someone's conduct to be deemed reckless, they must consciously disregard a substantial risk." *Olsen*, 462 N.W.2d at 476. "Although it is not always possible for the State to directly establish that a defendant was aware of a risk, it can be done indirectly through the defendant's conduct." *Id.* at 477.

[¶15.] Here, there is sufficient evidence from which the jury could conclude that McReynolds was aware of, yet disregarded a substantial risk, when she turned and struck Watson with a cellphone. McReynolds was aware that the officers were investigating her and attempted to flee when Watson and Seiner approached her the second time. Watson and Seiner testified that when Watson caught up with McReynolds, McReynolds immediately turned around and swung her phone down in a hammer-like fashion, striking Watson in the back of the head. A jury could have found from this testimony that McReynolds was consciously aware that her actions created a substantial risk of injury to Watson.

[¶16.] McReynolds claims that because of the brevity of the encounter she could not have formed the requisite intent required for simple assault, but this Court has rejected a claim that a "microsecond of recklessness" cannot form a "conscious disregard of a known risk." *Larson*, 1998 S.D. 80, ¶¶ 15, 18, 582 N.W.2d at 18-19. Consequently, when viewed in the light most favorable to the verdict, there is sufficient evidence that McReynolds violated SDCL 22-18-1.05 by recklessly causing bodily injury to another. *State v. Stone*, 2019 S.D. 18, ¶ 38, 925 N.W.2d 488, 500.

### 2. *Whether the circuit court erred by instructing the jury on facts not entered into the record.*

[¶17.] "In general, we review a trial court's decision to grant or deny a particular instruction under an abuse of discretion standard." *State v. McCahren*, 2016 S.D. 34, ¶ 5, 878 N.W.2d 586, 590. "However, a court has no discretion to give incorrect or misleading instructions, and to do so prejudicially constitutes reversible error." *State v. Diaz*, 2016 S.D. 78, ¶ 42, 887 N.W.2d 751, 763; *see also O'Day v. Nanton*, 2017 S.D. 90, ¶ 18, 905 N.W.2d 568, 572. "Whether the court gave incorrect or misleading instructions to a defendant's prejudice is a question of law reviewed de novo." *Diaz*, 2016 S.D. 78, ¶ 42, 887 N.W.2d at 763.

[¶18.] "An erroneous instruction is prejudicial if in all probability it produced some effect upon the verdict and is harmful to the substantial rights of the party assigning it." *First Premier Bank v. Kolcraft Enterprises, Inc.*, 2004 S.D. 92, ¶ 40, 686 N.W.2d 430, 448; *see also* SDCL 15-6-61. "To warrant reversal, defendants must show that [the challenged] instruction . . . probably would have returned a different verdict if the requested instruction had been given." *State v. Pellegrino*, 1998 S.D. 39, ¶ 9, 577 N.W.2d 590, 594.

[¶19.] McReynolds argues that instruction 16 was improper and prejudicial because it introduced facts and issues that were not before the jury and suggested to the jury that she had something to hide. She also argues that the court effectively forced a stipulation to the facts in the instruction without her agreement.

[¶20.] At the time the State proposed instruction 16, it argued that McReynolds had suggested to the jury that law enforcement did not have a basis for initiating the second encounter with McReynolds. The State also argued that the

jury might speculate if the second stop was proper because it did not know about the outstanding arrest warrant for McReynolds. While the circuit court did not find that McReynolds suggested the second encounter was improper, the court acknowledged that the jury could be confused about whether law enforcement had a basis to question McReynolds a second time. As such, the court concluded that the instruction was proper and was not harmful to McReynolds.

[¶21.] There is no claim that the instruction was incorrect or a misstatement of the law. Rather, the circuit court properly recognized that the outstanding warrant provided law enforcement with a legal basis for initiating a second encounter with McReynolds. Ironically, after McReynolds successfully moved to exclude evidence that she had an outstanding arrest warrant, she argues that the jury could have believed "that something was hidden from them." Under the circumstances, the circuit court's decision to exclude this evidence, and instruct the jury that the "legality of [the second] contact is not in dispute," was well within the court's discretion.

[¶22.] Additionally, instruction 16 did not prejudice McReynolds. McReynolds acknowledged while settling jury instructions, "I don't think that there has ever been any question about, and I don't think it's been raised into evidence, about whether the police had a reason to come into contact with [McReynolds]." The instruction did not address the central question of whether McReynolds committed a simple assault. Instead, it was given so that the jury would not speculate on what both parties recognized was a tangential and non-meritorious issue.

3. ***Whether the admission of a certified conviction from Codington County in the habitual offender trial violated McReynolds's Sixth Amendment right of confrontation.***

[¶23.] "An alleged violation of a constitutionally protected right is a question of law . . . ." *State v. Carothers*, 2005 S.D. 16, ¶ 7, 692 N.W.2d 544, 546. "Constitutional questions of law are reviewed de novo." *Id.*

[¶24.] The circuit court relied on SDCL 22-7-11[3] to admit McReynolds's prior Codington County conviction for simple assault against a law enforcement officer during the habitual offender trial. McReynolds challenges the admission of the prior conviction, arguing that the judgment of conviction was testimonial evidence that was received in violation of the Confrontation Clause of the Sixth Amendment.

[¶25.] "Both the United States Constitution and the South Dakota Constitution provide the right to confront and cross-examine the witnesses against a criminal defendant." *State v. McKinney*, 2005 S.D. 73, ¶ 18, 699 N.W.2d 471, 478 (citing U.S. Const. amend. VI; S.D. Const. art. VI, § 7). Enshrined within the meaning of the Sixth Amendment is the opportunity to confront those that would "bear testimony" against them. *Crawford v. Washington*, 541 U.S. 36, 51, 124 S. Ct. 1354, 1364, 158 L. Ed. 2d 177 (2004). "However, the prohibition only applies to testimonial evidence, which 'is typically a solemn declaration or affirmation made

---

3.  The relevant portion of SDCL 22-7-11 provides:

> An official court record under seal or a criminal history together with fingerprints certified by the public official having custody thereof is sufficient to be admitted in evidence, without further foundation, to prove the allegation that the defendant is an habitual criminal.

for the purpose of establishing or proving some fact.'" *State v. Reinhardt*, 2016 S.D. 11, ¶ 7, 875 N.W.2d 25, 27 (quoting *Crawford*, 541 U.S. at 51). "The constitutional text, like the history underlying the common-law right of confrontation, thus reflects an especially acute concern with a specific type of out-of-court statement." *Crawford*, 541 U.S. at 51.

[¶26.] This Court has previously held that the admission of a judgment of conviction does not require testimony from an official certifying to the authenticity of the document. *State v. Grooms*, 359 N.W.2d 901, 904 (1984). However, *Grooms* was decided prior to *Crawford v. Washington*. In rejecting a Confrontation Clause challenge, *Grooms* did not consider whether the prior conviction was the sort of evidence that would fit within *Crawford's* later testimonial standard.

[¶27.] *Crawford* held that certain types of hearsay, such as business records, are not testimonial. *Crawford*, 541 U.S. at 56. However, since *Crawford*, the Supreme Court has determined that some public records, such as laboratory analysis reports prepared in anticipation of prosecution, are testimonial and require the defendant be given the opportunity to cross-examine the analyst who created the report. *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 321, 129 S. Ct. 2527, 2538, 174 L. Ed. 2d 314 (2009) ("Documents kept in the regular course of business may ordinarily be admitted at trial despite their hearsay status. But that is not the case if the regularly conducted business activity is the production of evidence for use at trial."). *See also Bullcoming v. New Mexico*, 564 U.S. 647, 651, 131 S. Ct. 2705, 2709, 180 L. Ed. 2d 610 (2011) (holding a forensic laboratory report is testimonial for purposes of the Confrontation Clause).

[¶28.] The key distinction in determining whether a business record is testimonial and thus subject to the Confrontation Clause is whether the creation of the record was "calculated for use essentially in the court, not in the business." *Melendez-Diaz*, 557 U.S. at 321. Notably, in discussing testimonial evidence, *Melendez-Diaz* distinguished between testing results in a laboratory report created specifically for criminal prosecution and a clerk's certification of a copy of a record kept in the clerk's office. 557 U.S. at 322-323, 129 S. Ct. at 2539. "A clerk could by affidavit *authenticate* or provide a copy of an otherwise admissible record, but could not do what the analysts did here: *create* a record for the sole purpose of providing evidence against a defendant." *Id.* Hence, a record "created specifically to serve as evidence in a criminal proceeding" is testimonial. *Bullcoming*, 564 U.S. at 651, S. Ct. at 2709.

[¶29.] McReynolds does not challenge the admissibility of the Codington County judgment of conviction under SDCL 22-7-11 or the Rules of Evidence. Rather, she argues that it needed to be admitted through "some manner of witness" to afford her the opportunity to exercise her constitutional right to cross-examine a witness about the document. McReynolds does not specifically designate who that witness would be, but presumably it would be the clerk of courts as custodian of the record. The judgment of conviction contains a statement of certification from the clerk of court stating: "I hereby certify that the foregoing instrument is a true and correct copy of the original as the same appears on file in my office on this date: May 21, 2019." The clerk's certification that the document is an accurate copy of the record maintained in her office, thereby verifying the existence of the conviction

related therein, is not a testimonial statement triggering the right to cross-examination as discussed in *Crawford*.

[¶30.]     *Crawford* recognized that business and public records are not testimonial in nature.  541 U.S. at 56.  Applying *Crawford*, we have held that fingerprint cards are administrative public records that are non-testimonial because they "are not themselves evidence of any particular crime . . . ."  *State v. Reinhardt*, 2016 S.D. 11, ¶ 8, 875 N.W.2d 25, 27.  Similarly, a judgment of conviction is a public record required to be maintained by statute.  SDCL 23A-27-4 requires that a judgment of conviction be memorialized in writing and include certain information reflecting the court proceedings leading up to the conviction.  While it is possible that a judgment of conviction could be used in a future court proceeding, the judgment of conviction is not prepared for that purpose.

[¶31.]     Similarly, courts have recognized that certifications authenticating a public record are not testimonial.  *See Melendez-Diaz*, 557 U.S. at 322-23, 129 S. Ct. at 2539.  The Ninth Circuit Court of Appeals faced this precise issue and stated, "Nevertheless, we conclude that a routine certification by the custodian of a domestic public record, such as that provided by [the record custodian], and a routine attestation to authority and signature . . . are not testimonial in nature." *United States v. Weiland*, 420 F.3d 1062, 1077 (9th Cir. 2005).  *See also State v. Redmond*, 804 N.W.2d 315 (Iowa Ct. App. 2011); *State v. Benefiel,* 131 Wash. App. 651, 654, 128 P.3d 1251, 1252 (2006).  The Eighth Circuit in *United States v. Causevic* more recently held that judgments of conviction cannot categorically be considered non-testimonial, but reaffirmed that judgments of conviction are non-testimonial when offered *solely* to prove the fact of the prior conviction:

> We agree . . . that criminal judgments may be admitted to show that a defendant has a prior conviction without violating the Confrontation Clause. But the defendant here challenges the government's use of a conviction for a significantly different purpose, namely, to show that he in fact committed the crime of which he was convicted.

636 F.3d 998, 1002 (8th Cir. 2011) (citations omitted).[4]

[¶32.]    Therefore, a judgment of conviction admitted to prove a prior felony conviction under habitual offender statutes in SDCL chapter 22-7—without testimony or an opportunity to cross-examine the certifying official—does not violate the Confrontation Clause of the Sixth Amendment.

[¶33.]    We affirm.

[¶34.]    GILBERTSON, Chief Justice, and KERN, SALTER and DEVANEY, Justices, concur.

---

4.    *Causevic* distinguished between the use of a judgment of conviction to prove the fact of a prior conviction (non-testimonial) and use of the judgment of conviction as evidence of a crime in the absence of a showing that the defendant had a prior opportunity to cross-examine the witnesses against him (testimonial). 636 F.3d at 1003. The testimonial use of the judgment of conviction in *Causevic* has no application to this case.