#29684-a-SPM
**2022 S.D. 75**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

ED SUVADA,                                      Plaintiff and Appellant,

    v.

GEORGE JOHN MULLER, II and
CHRISTINE MULLER,                               Defendants and Appellees.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
LAWRENCE COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE ERIC J. STRAWN
Judge

* * * *

DAVE L. CLAGGETT of
Claggett & Dill, Prof. LLC
Spearfish, South Dakota                         Attorneys for plaintiff and
    appellant.


ROBERT J. GALBRAITH of
Nooney & Solay, LLP
Rapid City, South Dakota                        Attorneys for defendants and
    appellees.

* * * *

CONSIDERED ON BRIEFS
FEBRUARY 14, 2022
OPINION FILED **12/14/22**

#29684

MYREN, Justice

[¶1.]        Ed Suvada commenced this action to foreclose a materialmen's lien to recover for material and labor he expended in renovating a cabin for George (Jack) and Christine Muller.  Suvada also sought damages for breach of contract.  The Mullers counterclaimed for breach of contract and fraud.  The jury found in favor of Suvada on his materialmen's lien, awarding him damages.  The jury also found in favor of the Mullers on both of their claims but only awarded damages on the breach of contract claim.  Suvada appeals, raising multiple issues.  We affirm.

**Facts and Procedural History**

[¶2.]        Suvada is a carpenter with nearly 50 years of experience.  In August 2016, Suvada signed a written contract with the Mullers for an addition and remodeling project on their cabin near Deadwood.  The contract covered labor and materials and included a clause stating that the work[1] would be "substantially completed on or before the 31st day of May, 2017."  The Mullers agreed to pay Suvada $131,600.00 plus tax for the material and labor performed, subject to any authorized change orders.  The contract stated, "[a]ll change orders shall be in writing and signed by both the Owner and the Contractor."[2]  The contract also included a payment schedule.

[¶3.]        The Mullers made timely payments until the end of May 2017, leaving approximately $5,000.00 to pay under the payment schedule.  Ultimately, the

---

1.      The contract included a page itemizing the work to be completed.

2.      It is undisputed that the parties only entered into one written change order (involving concrete).

Mullers withheld $2,690.00, claiming that items within the contract remained incomplete. Suvada claimed that the Mullers had him complete work beyond what was called for in the contract ("extras") between August 2016 and January 2018, preventing him from completing the contract on time. He asserted that the Mullers gave him over 60 additional "extras," which were not part of the written contract, including installing different siding and soffit.

[¶4.]     On January 10, 2018, approximately eight months after the contract's expected completion date, Suvada and Jack Muller spoke over the phone. Both parties acknowledged that the phone call was "heated"; however, they disagreed about the call's contents. Jack Muller claimed that he asked Suvada to complete the contractual work and that they would "figure out the extras after the contractual work had been completed." Suvada contended that Jack Muller told him to stop working. Following the phone call, the Mullers sent Suvada an email requesting that he bill them for the "extras" and complete the contract work by March 1, 2018.[3]

[¶5.]     Suvada did not return to the worksite, and the project remained incomplete. In February 2018, the Mullers sent Suvada a termination letter. In March 2018, Suvada served the Mullers with his notice of intent to claim a

---

3.     Over the course of the project, Suvada billed the Mullers for numerous "extras," which the Mullers paid in addition to the contract amounts. As the project came to its conclusion, Suvada billed the Mullers for "extras" in December 2017 and February 2018. The Mullers initially wrote Suvada checks for the December invoices but later cancelled the checks before Suvada deposited them.

materialmen's lien[4] on the property. Suvada then filed his lien statement with the register of deeds in Lawrence County, alleging that the Mullers owed him $16,389.35 for labor and materials.[5] Shortly after, the Mullers demanded that Suvada commence suit to enforce the lien under SDCL 44-9-26. Suvada commenced this action to foreclose the lien and also alleged breach of contract. He requested the lien sum, costs, and attorney fees. Suvada simultaneously filed a notice of lis pendens, including a bill of particulars with itemized invoices.

[¶6.] The Mullers filed their answer, denying Suvada's causes of action and asserting several affirmative defenses. The Mullers also counterclaimed, alleging breach of contract, construction defects/negligence, fraudulent misrepresentations, and seeking declaratory judgment. They demanded a jury trial on all issues triable to a jury. The Mullers also sought $38,310.55 for the amount they expended to hire All Star Construction (All Star) to finish the work Suvada allegedly failed to complete under the contract.

[¶7.] Suvada filed a motion to dismiss and a reply to the Mullers' counterclaims. Discovery ensued. In September 2020, Suvada filed a motion for a scheduling order to establish dates to set a pretrial hearing and trial. The parties agreed to a two-day jury trial starting on March 24, 2021.

---

4. A mechanic's and materialmen's lien grants a person, who "at the request of the owner . . . furnish[ed] skill, labor, services, including light, power, or water, equipment, or materials for the improvement, development, or operation of property" to have a lien thereon. SDCL 44-9-1.

5. The materialmen's lien did not relate to anything owed under the contract; instead, it related only to the "extras" completed by Suvada at the Mullers' request.

[¶8.] On March 9, 2021, Suvada filed an objection to the Mullers' demand for a jury trial, arguing that a foreclosure of a materialmen's lien operates like a mortgage foreclosure and that foreclosures do not allow for a trial by jury. *See First Nat'l Bank of Phillip v. Temple*, 2002 S.D. 36, ¶ 12, 642 N.W.2d 197, 202 (noting that foreclosure of a mortgage is an equitable action); SDCL 44-9-23 (stating that a materialmen's "lien . . . action shall be begun and conducted in the same manner as actions for the foreclosure of mortgages upon real estate"). He also argued that the Mullers' fraud claim and request for punitive damages do not entitle them to a jury trial. In his view, his "mechanic's lien is the heart of this litigation," and "[a]ll other claims are, at best, pendant [sic]" because "[t]he lien is based on the construction contract between the parties, the change orders, and payment."

[¶9.] In response to Suvada's objection to a jury trial, the Mullers argued that the parties had agreed to the jury trial in their scheduling order and noted that Suvada's complaint included a breach of contract claim, which they asserted was appropriate for a jury trial. Similarly, they argued that their counterclaims for breach of contract and fraud were both appropriate for a jury trial. The circuit court overruled Suvada's objection.

[¶10.] At the jury trial, Suvada was the sole witness in his case-in-chief. He testified that when he bid on the job, he calculated that it would take him 224 hours to install the type of siding and soffit initially selected by the Mullers. Suvada claimed that after the contract was signed, the Mullers chose new siding and soffit that required more labor than he estimated in the original bid. He testified that instead of changing the written contract amount, he and the Mullers agreed that he

would charge $38.00 per hour, as "extras," for any time he spent installing the new siding and soffit that went beyond the budgeted 224 hours (224-hour credit). He asserted that, but for the "extras," he would have been able to complete the contract by the May deadline.

[¶11.]     On cross-examination, Suvada acknowledged the completion deadline and admitted that the parties never executed a written change order about the completion date. He also admitted that there was no written change order, email, or text about the 224-hour credit. When asked whether he told the Mullers that his son would help with the construction project (thus supporting the Mullers' claim that even with the "extras," Suvada represented he would complete the project on time), his counsel objected and asserted the parol evidence rule. Suvada argued the terms of the contract must be derived from the four corners of the written contract; thus, testimony regarding discussions prior to the contract was improper. The Mullers asserted that the evidence pertained to Suvada's representations about the completion timeline. The circuit court overruled the objection.

[¶12.]     On the second day of trial, outside the jury's presence, the parties addressed the materialmen's lien with the circuit court. Suvada noted that it was within the circuit court's authority to render a decision on the materialmen's lien. The Mullers contested the validity of Suvada's lien, arguing that the lien was not properly itemized. The circuit court noted it would review the lien "after everything [was] done" to determine whether it was properly itemized. The Mullers argued that Suvada could elect which claim to pursue and suggested that if Suvada elected his materialmen's lien claim and withdrew his breach of contract claim, the circuit

court could decide the materialmen's lien claim. They asserted that if no election occurred and both issues were presented to the jury, the jury's decision would bind the circuit court. The circuit court clarified that if Suvada withdrew his breach of contract claim, the court "would take the materialmen's lien under consideration, and then [the parties] both could brief it out and [the court] could render a decision on the materialmen's lien." The circuit court inquired, "So how do you envision me giving this to the jury?" Counsel for Suvada suggested that during the settling of jury instructions, the circuit court would need to decide whether the materialmen's lien was sufficiently itemized to be valid. The Mullers agreed but noted that even if the circuit court found the materialmen's lien to be deficient, the jury would still need to decide the breach of contract claim.

[¶13.]        After Suvada rested, the Mullers reserved their right to make motions and called Jack Muller as their first witness. He testified to the terms of the contract and the clauses contained therein. When Jack Muller was asked whether Suvada made any representations during contract negotiations that Suvada would have an additional worker help on the project, Suvada objected, citing the parol evidence rule. The circuit court overruled the objection, and Jack Muller responded that Suvada said his son would help. Jack Muller also testified that Suvada never indicated, before signing the contract, that his son was unavailable. Jack Muller acknowledged that Suvada completed "extras" but denied that they had agreed to pay $38.00 per hour for the "extras." He also testified that he and his wife hired All

Star to complete the contractual work.[6] Christine Muller testified consistently with Jack Muller, including that she was never told the project would take more time or cost more money.

[¶14.]     After both parties rested, the Mullers requested a judgment as a matter of law on their breach of contract claim. Emphasizing that there was no dispute that the contract required completion by May 31, 2017, the Mullers noted that SDCL 53-8-7 provides that written contracts can only be modified in two ways—either by a written contract or an executed oral agreement. They argued that Suvada did not present evidence showing a written modification of the contract's completion date and that the only other viable argument for a change of the written agreement would be the existence of an executed oral agreement, which they claimed did not occur because neither party fully performed. The Mullers also requested the circuit court determine as a matter of law that there was no agreement for the 224-hour credit concerning the installation of siding and soffit for the same reasons—there was no written modification of the contract and no executed oral agreement. In response, Suvada argued that a change order modifying the contract deadline was unnecessary given the parties' conduct and that the Mullers' payments indicate that an oral contract for the 224-hour credit existed.

---

6.     The Mullers called an All Star representative to testify at trial. The representative testified that the project was unfinished when All Star got there and that the company quoted the Mullers $38,310.55 to finish the project. All Star ultimately completed the project, and the Mullers paid All Star that amount.

[¶15.]     The circuit court granted the Mullers' motion for judgment as a matter of law.  First, the circuit court concluded that there was no agreement to modify the original contract's completion date, and Suvada breached the contract by failing to complete the project by that date.  Second, the circuit court determined that there was no executed oral agreement to modify the original contract to create a 224-hour credit for the installation of siding and soffit.  Finally, the circuit court determined that Suvada's materialmen's lien was properly filed.

[¶16.]     During the settling of jury instructions, the circuit court overruled Suvada's objections to six specific instructions.  The parties proceeded with closing arguments—Suvada requested the jury award him $16,389.35, while the Mullers asked for an award of $35,620.55.[7]

[¶17.]     The jury awarded Suvada $8,049.99 for his claims.  The jury also awarded the Mullers $28,505.22 for their breach of contract claim.  Although the jury found Suvada committed fraud, the jury declined to award the Mullers any damages on the fraud claim.  The circuit court denied both parties' requests for attorney fees and costs.  The circuit court also set off the verdicts resulting in a judgment for the Mullers for $20,455.23, prejudgment interest in the stipulated amount of $4,129.80, and post-judgment interest.  Suvada appeals, raising the following issues, which we restate as follows:

> 1.     Whether the circuit court erred in granting the Mullers' demand for jury trial on all triable issues and in allowing

---

7.     The Mullers initially requested $38,310.55 to cover the work performed by All Star.  However, they later reduced it by $2,690.00 to account for the unpaid amount under the original contract with Suvada.

> the jury to determine the amount due, if any, to Suvada on the materialmen's lien.

2.  Whether the circuit court erred in granting the Mullers' motion for judgment as a matter of law.

3.  Whether the circuit court erred in instructing the jury.

4.  Whether sufficient evidence supports the verdict granting Suvada damages in an amount smaller than requested.

5.  Whether the circuit court abused its discretion in denying Suvada's application for attorney fees and costs.

6.  Whether Suvada is entitled to appellate attorney fees.

### *Jury trial*

[¶18.]     Suvada claims the Mullers were not entitled to a jury trial, regardless of their counterclaims, because, in his view, the "real, meritorious controversy" at issue was his materialmen's lien, a primarily equitable action.  In response, the Mullers assert that they have a constitutional right to a jury trial on legal claims, including Suvada's breach of contract claim and their counterclaims for breach of contract and fraud.  Additionally, the Mullers note that Suvada suggested to the circuit court that the jury determine the amount due on the materialmen's lien.

[¶19.]     Article VI, § 6 of the South Dakota Constitution and SDCL 15-6-38(a)–(b) guarantee the right to a jury trial; nevertheless, that right "does not exist in all civil cases." *Nizielski v. Tvinnereim*, 453 N.W.2d 831, 832–33 (S.D. 1990).  "In cases where the pleadings seek equitable relief . . . , a jury trial is a matter for the trial court's discretion.  Conversely, when the action is at law, either party has a right to a jury trial." *Mundhenke v. Holm*, 2010 S.D. 67, ¶ 14, 787 N.W.2d 302, 306

(omission in original) (quoting *First Nat'l Bank of Philip v. Temple*, 2002 S.D. 36, ¶ 10, 642 N.W.2d 197, 201).

[¶20.] We review de novo whether an action (or claim) is legal or equitable in nature. *Nizielski*, 453 N.W.2d at 832–33 (applying de novo review in determining whether "an action arises at law or equity[.]"). To determine whether an action seeks equitable or legal relief, the circuit court reviews "the real, meritorious controversy between the parties. . . . [T]he court looks to the ultimate and entire relief sought, as presented by the pleadings, including the complaint, answer, cross-complaint and prayer for relief." *First Nat'l Bank of Philip*, 2002 S.D. 36, ¶ 10, 642 N.W.2d at 201 (quoting *Arlt v. Langley*, 56 S.D. 79, 88, 227 N.W. 469, 473 (1929)). "[W]hen a case presents both a request for equitable relief and legal relief, the proper course of action is for the trial court to bifurcate the issues and try the equitable claims to the court and the legal claims to a jury." *Mundhenke*, 2010 S.D. 67, ¶ 16, 787 N.W.2d at 306.

[¶21.] Clearly, the Mullers' counterclaims for breach of contract and fraud sought legal relief and were subject to the right to trial by jury. The Mullers requested a jury trial on these issues, and the circuit court properly granted their request. Similarly, Suvada's claim for breach of contract also sought legal relief and was subject to a request for a jury trial.

[¶22.] We have previously determined that the foreclosure of a mechanic's lien is an action in equity. *Duffield Constr., Inc. v. Baldwin*, 2004 S.D. 51, ¶ 6, 679 N.W.2d 477, 480. Therefore, Suvada's action to enforce a materialmen's lien is equitable in nature, and it is not subject to a jury trial as a matter of right.

However, this determination does not preclude using a jury to assist the circuit court and the parties in resolving issues related to the materialmen's claim. *See First W. Bank, Sturgis v. Livestock Yards Co.*, 466 N.W.2d 853, 856 (S.D. 1991) ("If the relief sought is equitable, the decision of whether to empanel an advisory jury is wholly within the trial court's discretion.").

[¶23.]     The Supreme Court of Dakota Territory noted in *McCormack* that "the progress of the action in the [circuit] court" is a "significant and controlling factor" in determining the outcome of the case. *McCormack*, 4 Dak. 506, 532, 34 N.W. 39, 53–54 (1887). In that case, the Court determined that a party could not assert on appeal that an equitable matter decided by a jury with a general verdict should instead have been tried to the court after the party stipulated to a jury trial and had not requested any special findings by the jury. *Id.* at 532, 34 N.W. at 54.

[¶24.]     Likewise, the progress of this action before the circuit court is significant and controlling. The Mullers did not request a jury trial on Suvada's equitable materialmen's lien claim. Instead, they requested the circuit court find Suvada's materialmen's lien legally deficient because, in their view, it was not sufficiently itemized as required by statute. The Mullers then suggested that if the court determined that the lien was legally sufficient, the jury could be utilized to resolve the factual issue of how much was owed. In response, Suvada noted that the circuit court could determine the validity of the materialmen's lien and that upon finding validity, the court would say, "[j]ury, this is what you need to respond to." Suvada later reinforced this contention, stating that the only question for the

jury is whether the amount he claimed in the lien "is the amount the jury's going to come up with, or if they're going to come up with a different amount."

[¶25.] As discussed by the parties, the circuit court proceeded to rule on the legal question of whether Suvada's materialmen's lien was legally sufficient, then tasked the jury with determining what amount was due to Suvada on his lien. *See Lytle v. Morgan*, 270 N.W.2d 359, 361 (S.D. 1978) (A party seeking to recover on a mechanic's lien does not have "the power to arbitrarily set the value of material and labor without the necessity of proving the value thereof."), *abrogated on other grounds by Magner v. Brinkman*, 2016 S.D. 50, ¶ 12, 883 N.W.2d 74, 80; SDCL 44-9-40 (stating that "[j]udgment shall be given in favor of each lien holder for the amount demanded and *proved* by him" (emphasis added)). The circuit court's instructions informed the jury that Suvada's materialmen's lien was valid and that it was the jury's job to "determine the amount to award to Mr. Suvada, if any." Given the legal claims brought by both parties and the absence of any objection by Suvada to presenting the question of the amount due under the materialmen's lien to the jury, the circuit court did not err in granting the Mullers' demand for a jury trial on all triable issues.

*Judgment as a matter of law*

[¶26.] Suvada argues that the circuit court erred in granting the Mullers' motion for judgment as a matter of law. He contends that he presented sufficient evidence to establish an oral agreement for "extras," which prevented him from completing the contract in the specified time. He also asserts that there was evidence in the record to support his claim that there was to be a 224-hour credit

under the contract. In response, the Mullers assert that the contract's completion date was undisputed and that Suvada admitted that he had not completed the work required by the contract. The Mullers also argue that there was no executed oral modification of the original contract pursuant to SDCL 53-8-7[8] regarding Suvada's claimed 224-hour credit.

[¶27.] The grant or denial of a motion for judgment as a matter of law is a question of law reviewed de novo. *Magner*, 2016 S.D. 50, ¶ 13, 883 N.W.2d at 81. Circuit courts have the authority to grant motions for judgment as a matter of law under SDCL 15-6-50(a). The statute provides, in relevant part, that:

> If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

SDCL 15-6-50(a)(1). "Factual disputes generally prohibit granting a judgment as a matter of law." *Alvine Fam. Ltd. P'ship v. Hagemann*, 2010 S.D. 28, ¶ 19, 780 N.W.2d 507, 513.

[¶28.] Matters of contract interpretation are questions of law reviewed de novo, and "[w]hen interpreting a contract, this Court looks to the language that the parties used in the contract to determine their intention." *Charlson v. Charlson*, 2017 S.D. 11, ¶ 16, 892 N.W.2d 903, 908 (quoting *Detmers v. Costner*, 2012 S.D. 35,

---

8. SDCL 53-8-7 provides that "[a] contract in writing may be altered by a contract in writing without a new consideration or by an executed oral agreement, and not otherwise."

¶ 20, 814 N.W.2d 146, 151). "In order to ascertain the terms and conditions of a contract, we examine the contract as a whole and give words their plain and ordinary meaning." *Id.* (quoting *Nygaard v. Sioux Valley Hosps. & Health Sys.*, 2007 S.D. 34, ¶ 13, 731 N.W.2d 184, 191). "To form a contract, there must be a meeting of the minds or mutual assent on all essential terms." *Jacobson v. Gulbransen*, 2001 S.D. 33, ¶ 22, 623 N.W.2d 84, 90.

[¶29.] The language of the parties' written contract is controlling. It required that Suvada "substantially complete[ ]" the contracted work "on or before the 31st day of May, 2017," and by its express terms, "[t]he parties agree[d] that time is of the essence." Suvada admitted he did not complete the project on time. Moreover, there is no evidence that the parties agreed, orally or in writing, to extend this deadline.[9] Under the circumstances presented in this record, the circuit court did not err by entering a judgment as a matter of law, determining that Suvada breached the contract by failing to complete the work as required by the terms of the contract.

[¶30.] Suvada has also failed to establish error by the circuit court in granting judgment as a matter of law on his claim for "extras." The contract required that modifications to the agreement be in writing. It is undisputed that there was no written modification of the contract to include a requirement that

---

9. We have held that the parties may waive the time for performance in a written contract, and that an oral waiver of the time for performance "is not an alteration of a written contract." *Hanna v. Landsman*, 2020 S.D. 33, ¶ 27, 945 N.W.2d 534, 543 (quoting *Johnson v. Sellers*, 2011 S.D. 24, ¶ 16, 798 N.W.2d 690, 695). However, Suvada failed to present evidence that the Mullers waived the time is of the essence clause, and he does not argue on appeal that the Mullers waived this provision in the written contract.

Suvada would be paid for extra work or that the parties agreed to a written change order to encompass that work. However, Suvada claims that the parties had orally modified the written contract to allow him to bill the Mullers for any time spent installing siding and soffit beyond the "224-hour credit."

[¶31.] Under SDCL 53-8-7, an *executed* oral agreement can modify a written contract. Execution would be demonstrated by evidence that both parties completed the requirements of the oral modification. *See Aalseth v. Simpson*, 57 S.D. 118, 231 N.W. 289, 291 (1930);[10] *see Contract*, Black's Law Dictionary (11th ed. 2019) (noting that an "executed contract" is one that "has been fully performed by both parties"). Suvada does not argue that the requirements to modify a written contract under SDCL 53-8-7 were satisfied or that the Mullers' partial payment for some "extras" was legally sufficient to constitute an "executed oral agreement" modifying the written contract to require payment for Suvada's time spent installing siding and soffit beyond the "224-hour credit."

[¶32.] Suvada admitted that he never completed the work required under the contract or the "extras" for which he sought payment. Further, even though the Mullers had paid Suvada for some "extras," they withheld full payment under the contract and did not pay the money requested by Suvada for his time spent on other "extras." In the absence of evidence that the parties had fully executed an oral agreement to modify the written contract to require payment for "extras," Suvada

---

10.    *Aalseth* looked to Section 908, Rev. Code 1919, which provided that "[a] contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise." Section 908, Rev. Code 1919 is substantially similar to SDCL 53-8-7.

was bound by the terms of the written contract. *See, e.g.*, *Share v. Coats*, 29 S.D. 603, 137 N.W. 402 (1912) (holding that an oral agency agreement to pay more in commission than provided in the written agreement was not executed because full payment had not been made under the oral agreement and thus the rate in written agreement controlled). The circuit court did not err in granting judgment as a matter of law on Suvada's claim for "extras."

### *Jury instructions*

[¶33.] "[A] trial court's decision to grant or deny a particular jury instruction [is reviewed] under the abuse of discretion" standard, but jury instructions, as a whole, are reviewed de novo to determine whether they correctly "state the law and inform the jury." *State v. Waloke*, 2013 S.D. 55, ¶ 28, 835 N.W.2d 105, 112–13 (quoting *State v. Roach*, 2012 S.D. 91, ¶ 13, 825 N.W.2d 258, 263). "[A] court has no discretion to give incorrect or misleading instructions, and to do so prejudicially constitutes reversible error." *State v. McReynolds*, 2020 S.D. 65, ¶ 17, 951 N.W.2d 809, 815 (quoting *State v. Diaz*, 2016 S.D. 78, ¶ 42, 887 N.W.2d 751, 763). "Error is not reversible unless it is prejudicial. The party asserting error has the burden of showing prejudice in failure to give a requested instruction." *Bauman v. Auch*, 539 N.W.2d 320, 323 (S.D. 1995). "Erroneous instructions are prejudicial under SDCL 15-6-61 when in all probability they produced some effect upon the verdict and were harmful to the substantial rights of a party." *Schultz v. Scandrett*, 2015 S.D. 52, ¶ 22, 866 N.W.2d 128, 136 (quoting *Vetter v. Cam Wal Elec. Coop., Inc.*, 2006 S.D. 21, ¶ 10, 711 N.W.2d 612, 615).

[¶34.] Suvada argues that the circuit court erred by providing jury instructions 25 (the elements of fraudulent misrepresentation), 25A (the elements of

fraudulent concealment), and 26 (general fraud instruction). He alleges that the Mullers were not entitled to an independent tort claim for fraud and that jury instructions on those claims were improper. Intertwined in his argument regarding fraud is his assertion that the jury heard improper parol evidence about whether he had represented that he would have additional help to complete the project. He contends that the testimony went beyond the contract's four corners and should have been excluded regardless of the Mullers' fraud claims. He asserts that the improperly admitted parol evidence regarding the Mullers' fraud claim prejudiced him, warranting a new trial. In response, the Mullers argue that their fraud claim was properly before the jury and that the evidence was admissible to prove fraud.

[¶35.] "[C]onduct which merely is a breach of contract is not a tort, but the contract may establish a relationship demanding the exercise of proper care and acts and omissions in performance may give rise to tort liability." *Schipporeit v. Khan*, 2009 S.D. 96, ¶ 7, 775 N.W.2d 503, 505 (quoting *Grynberg v. Citation Oil & Gas Corp.*, 1997 S.D. 121, ¶ 18, 573 N.W.2d 493, 500). "Because torts arise out of a legal duty, the question becomes whether such duty is 'born of that wider range of legal duty which is due from every man to his fellow, to respect his rights of property and person, and refrain from invading them by force or fraud.'" *Wright v. Temple*, 2021 S.D. 15, ¶ 57, 956 N.W.2d 436, 454–55 (quoting *Grynberg*, 1997 S.D. 121, ¶ 21, 573 N.W.2d at 501). We must therefore focus "on whether a legal duty exists independent of the obligations under the contract." *Id.* (quoting *Grynberg*, 1997 S.D. 121, ¶ 22, 573 N.W.2d at 501).

[¶36.]    While the Mullers maintain that a legal duty existed beyond the contract obligation, their argument is unfounded. The Mullers claimed that Suvada misrepresented that he would have enough help to fulfill the contract by the completion date and that he concealed that he would not have enough help to complete the contract on time. However, both claims pertain to whether Suvada satisfied his contractual obligation to complete the project by the contract's deadline. Neither assertion involves a claimed violation of a duty that exists independent of the contract. Consequently, the circuit court erred by allowing the Mullers' fraud claims to proceed to the jury and by providing jury instructions on those claims.

[¶37.]    However, Suvada bears the burden of establishing that the erroneous jury instructions "produced some effect upon the verdict and were harmful to the substantial rights of a party." *Schultz*, 2015 S.D. 52, ¶ 22, 866 N.W.2d 1 at 136 (quoting *Vetter*, 2006 S.D. 21, ¶ 10, 711 N.W.2d at 615). Here, the jury awarded the Mullers nothing for their fraud claim, making the error harmless. Suvada has not advanced any argument that submitting these fraud claims to the jury inappropriately impacted the jury's determinations about any other claims.[11]

---

11.    Given our holding that the circuit court committed harmless error in submitting the fraud claim to the jury, we decline to address the parol evidence issue related to that claim. Suvada also makes a passing reference in his appellate brief to the circuit court having given a damages instruction (jury instruction 27) that set forth "an improper measure of damages." Beyond this conclusory statement, Suvada has not provided an argument as to why this instruction was improper. Thus, we decline to review this issue. *See* SDCL 15-26A-60(6) (requiring an appellant brief to "contain the contentions of the party with respect to the issues presented, the reasons therefore, and the citations to the authorities relied on"); *see also State v. Fool*

(continued . . .)

***Sufficiency of the evidence***

[¶38.] Suvada asserts "insufficiency of evidence of the record to reduce the full amount of the mechanic's lien." Suvada requested the jury award him $16,389.35 for services and materials from and after January 10, 2018. He claims that under general principles of lien statutes, the jury should not have been able to render a verdict less than his requested amount. We disagree.

[¶39.] As discussed above, Suvada was not automatically entitled to the lien amount and was instead "obligated to prove that the amount demanded constituted 'the reasonable value of the work done, and of the skill, material and machinery furnished.'" *Lytle*, 270 N.W.2d at 361 (quoting SDCL 44-9-6). Ultimately, the finder of fact in any lien action must determine the amount "proved" by the lien holder. *See* SDCL 44-9-40 (stating that a lien holder is entitled to judgment "for the amount demanded and proved"). As discussed earlier, these parties agreed to utilize a jury to determine the amount due under the lien in this case.

[¶40.] "In our review of the sufficiency of the evidence supporting a jury verdict, '[w]e are not to speculate or query how we would have viewed the evidence and testimony, or what verdict we would have rendered had we been the jury.'" *Wright*, 2021 S.D. 15, ¶ 28, 956 N.W.2d at 446 (alteration in original) (quoting *Knecht v. Evridge*, 2020 S.D. 9, ¶ 37, 940 N.W.2d 318, 329). "Rather, we determine whether 'there [is] any legal evidence upon which the verdict can properly be based,

_____

(. . . continued)
    *Bull*, 2009 S.D. 36, ¶ 46, 766 N.W.2d 159, 169 (declining to address an issue because appellant cited no authority and offered no argument in his brief regarding the propriety of the jury instructions).

and [whether] the conclusions embraced in and covered by [the verdict were] fairly reached[.]'" *Id.* (alterations in original) (quoting *Roth v. Farner-Bocken Co.*, 2003 S.D. 80, ¶ 25, 667 N.W.2d 651, 661). "If the jury's verdict can be explained with reference to the evidence, rather than by juror passion, prejudice or mistake of law, the verdict should be affirmed." *Morrison v. Min. Palace Ltd. P'ship*, 1999 S.D. 145, ¶ 14, 603 N.W.2d 193, 197 (quoting *Gilkyson v. Wheelchair Express, Inc.*, 1998 S.D. 45, ¶ 19, 579 N.W.2d 1, 5).

[¶41.]    It is the jury's job, as the trier of fact, to "weigh the conflicting evidence or decide upon the credibility of the witnesses." *LDL Cattle Co., Inc. v. Guetter*, 1996 S.D. 22, ¶ 19, 544 N.W.2d 523, 527. While the parties presented conflicting evidence on the amount due on the lien, the jury weighed the evidence and determined that Suvada was entitled to an amount less than he had requested. This was within the jury's authority, and Suvada's argument is unpersuasive. *See Wald, Inc. v. Stanley*, 2005 S.D. 112, ¶ 15, 706 N.W.2d 626, 631 (noting a lien holder recovered a fraction of the original materialmen's lien amount).

### *Attorney fees*

[¶42.]    "We review a trial court's ruling on the allowance or disallowance of costs and attorney fees under an abuse of discretion standard." *In re Heupel Fam. Revocable Tr.*, 2018 S.D. 46, ¶ 34, 914 N.W.2d 571, 580 (quoting *Johnson v. Miller*, 2012 S.D. 61, ¶ 7, 818 N.W.2d 804, 806). An abuse of discretion "is a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary or unreasonable." *Arneson v. Arneson*, 2003 S.D. 125, ¶ 14, 670 N.W.2d 904, 910. In materialmen's lien proceedings, the

circuit court has the discretion to award attorney fees and expenses that it determines are "warranted and necessary according to the circumstances of each case[.]" SDCL 44-9-42.

[¶43.] Suvada claims the circuit court abused its discretion in denying his request for attorney fees, alleging that his fees and expenses were "warranted and necessary." *See* SDCL 44-9-42. Suvada also cites other statutes to support his contention that he is entitled to attorney fees.[12] Further, Suvada relies on *Wald*, where we affirmed an award of attorney fees when the contractor recovered a fraction of the original materialmen's lien amount. 2005 S.D. 112, ¶ 15, 706 N.W.2d at 631.

[¶44.] The circuit court emphasized that the jury awarded the Mullers a larger award than Suvada, which "favors their position that no attorney's fees should be awarded to [Suvada]." The circuit court also distinguished this case from *Wald*, emphasizing that the Mullers' award was nearly three times that of Suvada's award and that "the jury found in favor of both parties in their respective breach."

[¶45.] Suvada provides no citation to statute or decisional law *requiring* the circuit court to grant him attorney fees and costs.[13] While he argues our holding in *Wald* is applicable, he fails to recognize the most salient distinguishing factor—the contractor in *Wald* was the only prevailing party. In contrast, this jury found in

---

12. He cites SDCL 15-6-54(d)(2), SDCL 15-17-37, and SDCL 15-17-38.

13. SDCL 44-9-42 provides that a "court shall have authority in its discretion" to award fees. Similarly, SDCL 15-17-37 provides that a "prevailing party . . . may recover expenditures[.]" SDCL 15-6-54(d) provides "costs and disbursements, other than attorneys' fees, shall be allowed as of course to the prevailing party unless the court otherwise directs."

favor of both Suvada and the Mullers on their respective claims. The circuit court had discretion in determining whether to award attorney fees and costs, and Suvada has not established that the court abused its discretion in denying Suvada's request.

### *Appellate attorney fees*

[¶46.] Suvada requested appellate attorney fees of $5,722.50 under SDCL 15-26A-87.3. He submitted an itemized and verified statement of costs associated with this appeal. We decline to award him appellate attorney fees.

[¶47.] JENSEN, Chief Justice, and KERN, SALTER, and DEVANEY, Justices, concur.